PROK, Plaintiff-Appellee, v. CLEVELAND (City), Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22121. Decided May 14, 1951.

A. H. Dudnik, Kohrman & Kohrman, Cleveland, for plaintiff-appellee.

R. J. Shoup, R. C. Green, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment entered for the plaintiff. The plaintiff was involved in an accident and claims that the negligence of one of the defendant's street car operators was a contributing cause of his injury and damage.

On April 21, 1948, at about 8:00 o'clock P. M., plaintiff was attempting to cross West 65th Street from the west to the east side at about its intersection with Wakefield Avenue. His purpose was to board an east-bound Madison Avenue street car which at that point proceeds north on West 65th Street from Madison Avenue to Bridge Avenue. He had reached a point somewhat past the center line of West 65th Street when he was struck by a motor vehicle then being driven north on West 65th Street by John Perkins. The street car was following behind the north-bound automobile and when the automobile stopped suddenly upon striking the plaintiff, the street car ran into the rear of the automobile, pushing it forward a few feet and in so doing it is the claim of the plaintiff that he received further injuries.

The defendant claims the following errors:

1. In overruling defendant's motion for judgment n. o. v.

2. That the judgment is not sustained by the weight of the evidence.

3. In the admission and exclusion of evidence.

4. In refusing to charge on the duty of a pedestrian in crossing a street as is provided by §6307-46 (a) GC.

5. In refusing to submit to the jury findings of fact as requested by the defendant.

6. Errors in the general charge on the subject of speed in over-emphasizing plaintiff's claims over those of defendant, and in failing to charge that there could be no recovery unless plaintiff suffered injuries as a result of a second impact at the time the street car collided with the automobile of Mr. Perkins.

The defendant's first claim of error is founded on the admitted fact that the plaintiff received $3500.00 from John Perkins driver of the automobile which struck him as he was crossing West 65th Street.

As the case was originally filed, John Perkins was made a party defendant and the allegations of the petition were sufficient to state a joint cause of action. These allegations were not changed after Perkins was dismissed from the case. The defendant, by its amended answer, alleged that plaintiff settled his claim with Perkins, receiving $3500.00 in full settlement for his damages suffered in the accident. To this affirmative defense, plaintiff filed a reply alleging that the $3500.00 received from Perkins was not in full settlement but was received upon a covenant not to sue, reserving his right to continue his action as against the City of Cleveland.

The plaintiff, on cross-examination, testified as follows:

"Q. Mr. Perkins paid you $3500.00 did he not?

A. Yes, sir.

Q. After that you signed a paper releasing him didn't you?

A. Yes, sir."

The plaintiff at a later time in the trial, tried to offer a paper writing claimed to be a covenant not to sue that Prok executed in consideration for the payment of $3500.00 and not a release as claimed by the defendant. This paper, marked "Plaintiff's Exhibit 11" is not in the record because the court sustained defendant's objection thereto and excluded it. The plaintiff failed to make a proffer of this evidence. The only evidence in the record on this question is therefore as above quoted.

The defendant's contention under its first assignment of error is that its motion for judgment notwithstanding the verdict should have been granted because the release of one joint tort-feasor releases all. **Boyd v. Watt, 27 Oh St 259** at **page 267.**

In the case of **Adams Express Co. v. Beckwith, 100 Oh St 348** the Supreme Court of Ohio held:

"1. A written release in general and unqualified terms, made and executed upon legal consideration between a party wronged and one or more of the persons charged with the commission of the wrong, is presumed in law to be a release for the benefit of all the wrongdoers.

"2. Such written releases, however, are to be construed according to the well-known rules governing the construction of contracts.

"3. Where such written releases expressly provide that the release is solely and exclusively for the benefit of the parties thereto, and expressly reserves a right of action as against any other wrongdoer, such reservation is legal and available to the parties thereto.

"4. Such written release, whether it be a covenant not to sue, a covenant to cease suing, or a covenant in partial satisfaction does not inure to the benefit of any other persons than those who are parties to such written release, save and except that it is a satisfaction pro tanto to the party wronged and to that extent works a discharge to all joint wrongdoers." (**Ellis v. Bitzer, 2 Ohio 89** disapproved and overruled.)

In the case of **Garbe v. Halloran, 150 Oh St 476,** the supreme court had for consideration a three-way collision. The plaintiff's car was being driven easterly over the Anthony Wayne Bridge in Toledo. The rear end of her automobile was negligently struck by one Herbig while driving west on said bridge, causing plaintiff's motor vehicle to come to a stop partly across the inside west-bound lane, there being two east-bound lanes and two west-bound traffic lanes on the bridge. The defendant, then and there driving west about six seconds after the plaintiff's automobile had come to rest, collided with the side of plaintiff's automobile, causing further damage to plaintiff's automobile and personal injuries to the plaintiff. The plaintiff, on the theory that she had suffered damage in two separate accidents, settled her claim against Herbig for $360.00 and gave him an unqualified release. In holding that defendant and Herbig were joint tort-feasors and that by her release to Herbig she released the defendant, the supreme court held:

"1. Concurrent negligence consists of the negligence of two or more persons concurring, not necessarily in point of time but in point of consequence, in producing a single indivisible injury.

"2. Where the negligence of an earlier wrongdoer remains a dangerous force until the negligence of a later wrongdoer

concurs and combines with it to cause injury, the wrongdoers are concurrent tort-feasors and their combined negligence becomes the proximate cause of the injury.

"3. An absolute unqualified release in full satisfaction and discharge of one or more of several joint or concurrent tort-feasors answerable for a single injury implies the receipt of full satisfaction for the injury sustained, and for that reason is a release of all such tort-feasors unless such release contains an express reservation of the right to pursue other of such tort feasors than those so released.

4. Payment by one concurrent tort-feasor for his release from the injured person, even though not in full payment of the damage suffered but only in full payment of the claim of the injured person against him, operates to relieve from liability other concurrent tort-feasors likewise liable for the same tort, unless the injured person reserves the right to pursue such other concurrent tort feasors for the remainder of his damage."

In the Halloran case there was no issue as to the character of the release. It was unqualified. Likewise, the character of the release in the Adams Express Company case was not disputed. By its terms the plaintiff reserved all rights against other concurrent wrongdoers. But the evidence in the instant case with respect to the character of the release the plaintiff gave to Perkins, was erroneously excluded by the trial court by sustaining the defendant's objection to its introduction. If, upon a retrial, it should develop that such release was general in character, and there was no reservation of rights against other joint tort-feasors, then it will be the duty of the trial court to direct a judgment against the plaintiff; otherwise not. We therefore overrule the defendant's first claim of error.

The second claim of error is based upon the overruling of defendant's motion for new trial, it being the claim of defendant that the judgment is against the manifest weight of the evidence.

The defendant upon the submission of the case to the jury requested that if they found the defendant was negligent, to state of what such negligence consisted. The jury answered as follows:

"Cleveland Transit System failed to keep street car under control."

We must conclude, therefore, that the jury found against the plaintiff on all other claims of negligence as alleged in his petition.

There were six witnesses, including plaintiff and the motor-

man of the street car, who testified as to how the accident happened. The plaintiff's claim is based upon the testimony of Perkins who was the driver of the automobile involved in the accident. He testified that he followed the street car into the intersection of West 65th and Madison Avenue and as the street car turned north over West 65th Street he either at that point'or shortly thereafter, passed it by and proceeded ahead, straddling the east rail of the north-bound track at between 15 and 20 miles per hour. As he was approaching Wakefield Ave., he passed a south-bound automobile. (The record shows it was about 900 feet from Madison Avenue to Wakefield Avenue on West 65th St.) Perkins then testified as follows:

"After I passed the right hand intersection of Wakefield and West 65th Street, a man ran diagonally in front of my car and I struck him with my automobile. I tried to stop but couldn't. Then I started to get out right away."

He further testified that the lights of the south-bound car got in his eyes and when he saw the plaintiff he was only 30 feet away, running diagonally to the east directly into his path; that he slammed on his brakes and was going about six miles per hour when he hit plaintiff; that he started to get out and then saw the street car coming, through his rear-view mirror; that he then set his brakes and the street car hit him a good jolt but he does not know how far he was pushed or whether his automobile hit the plaintiff a second time upon being struck by the street car.

The plaintiff's evidence was to the effect that he was going to take an east-bound Madison Avenue car; that when he reached West 65th Street, walking east on the north side of Wakefield Avenue, he saw the street car on Madison Avenue 900 feet to the south; that the street car made a left-hand turn into West 65th Street and Perkins' automobile either passed on the turn or as it started down West 65th Street; that he looked north and saw two automobiles going south; he waited for these to pass and as they did he started to walk to the street car stop; when he saw Perkin's automobile only a foot away, it struck him and as he lay on the pavement in front of the automobile he heard the street car coming so he pulled himself upon the bumper and as the street car hit the automobile he felt his right leg break.

The credibility of the plaintiff's evidence is somewhat affected by the testimony of a court reporter who went to the hospital with a claim agent of defendant, five days after the accident. The witness testified from his notes. He says the plaintiff, in answer to questions put by the claim agent, in

effect said that the automobile jumped in front of the street car and was only 20 to 25 feet south of him when he first saw it. He further said:

"Yes, he turned in and was going full speed because he tried to pass the street car and there was another car parked at the curb."

As to this evidence, the plaintiff, in denying that he made these statements to the claim agent, says that he was "unconscious" although he does remember that he was there. The Sister in charge of the hospital was quoted as saying that the plaintiff was in good condition and not under the influence of any drug.

The plaintiff relies on the failure of the street car to be under such control as to make it impossible to stop before colliding with Perkins' automobile. There is no evidence as to how close the street car was following Perkins' automobile and the only evidence as to its speed came from the motorman who said he was travelling between 15 and 20 miles per hour.

There were three other witnesses who were either on Wakefield Avenue at the corner of West 65th Street or on West 65th Street north of Wakefield Avenue. All of these witnesses testified that the automobile of Perkins passed the street car as it approached Wakefield Avenue; that the plaintiff ran from behind the south-bound automobile directly into the path of Perkins' car; that he was hit and thrown from 8 to 15 feet and that the street car hit the automobile almost at once as it came to a stop.

The assured clear distance rule is not violated when the distance between a moving vehicle and a discernible object is suddenly cut down by some vehicle or obstruction coming into its path so that in the exercise of ordinary care such vehicle or obstruction cannot be avoided. The greater weight of the credible evidence is to the effect that the defendant did not violate the assured clear distance rule or that there was any failure to have the street car under proper control. The trial court should have granted defendant's motion for a new trial on the ground that the verdict was against the manifest weight of the evidence and the failure to do so constituted reversible error.

The defendant's third claim of error has to do with the admission into evidence of the stenographic report of the interview between the claim agent of defendant and the plaintiff at the hospital about five days after the accident. The defendant asked plaintiff certain questions, upon cross-examination, as to what he said on this interview about the

automobile suddenly coming out in front of the street car, for the purpose of impeaching his testimony given on direct examination. The plaintiff then offered, and the court received into evidence, the entire statement over defendant's objection.

In this the court committed error prejudicial to the rights of the defendant. It was perfectly proper to cross-examine the plaintiff as to any part of the interview as counsel for the defendant may desire to show contradiction therein with the testimony offered upon trial. The plaintiff could, undoubtedly, upon redirect examination seek to develop testimony in the statement explaining any seeming conflict, but that does not make the whole transcript of the interview admissible. The plaintiff was in court and testified fully as to his version of the accident. What he said at another time cannot be introduced to support his own evidence. The court should, therefore, have sustained the defendant's objection to the introduction of the stenographic report of the said interview.

The next claim of error has to do with the failure of the court to permit the defendant to cross-examine one of his witnesses, it being the defendant's claim that he was taken by surprise because the witness testified on cross-examination that the automobile hit the plaintiff a second time when it, the automobile, was struck by the street car. The defendant claimed to have a written statement from the witness contrary to the testimony.

It is a well recognized rule that where a party is taken by surprise by one of his witnesses he may cross-examine to, if possible, clear up the inconsistency. It was error to refuse to permit the defendant to examine his witness directly as to the two inconsistent statements.

The fifth claim of error is founded upon the refusal of the court to charge the jury on the effect of §6307-46(a) GC, on the duty of a pedestrian in crossing a street at a place other than a cross-walk.

Sec. 6307-46(a) GC provides as follows:

"Every pedestrian crossing a roadway within a municipality at a point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all traffic operating lawfully upon the roadway."

The evidence as to the character of the instruction shows that there was an off-set between the point where Wakefield Avenue intersected West 65th Street from the east, and the point of its intersection from the west, it being ten feet

further north on the west side of the street. The street car stop was to the north of the east side intersection. Just how far, if at all, the plaintiff was from the cross-walk is very indefinite and while it might have been of help to the jury to have been instructed upon the rules established by §6307-46 (a) GC, supra, the refusal under all of the circumstances did not constitute error prejudicial to the rights of the defendant.

The sixth claim of error is based upon the refusal of the court to submit to the jury certain findings of fact. These were as follows:

"A. Do you find from the evidence in this case that John Prok sustained any injuries after he was first struck by the automobile of John Perkins? If your answer to this question is in the affirmative, then answer No. 5. 5. State what those injuries were."

One of the conclusions reached under the first assignment of error, supra, was that the defendants were joint tort-feasors. If, therefore, it should be established that both were negligent and that such negligence of each was a contributing proximate cause of any injuries sustained by the plaintiff, both would be jointly and severally liable for the full damage.

Garbe v. Halloran, supra:

"2. Where the negligence of an earlier wrongdoer remains a dangerous force until the negligence of a later wrongdoer concurs and combines with it to cause injury, the wrongdoers are concurrent tort-feasors, and their combined negligence becomes the proximate cause of the injury."

If, therefore, the defendant was negligent which negligence caused injury to the plaintiff, combining with other injuries sustained in the same accident, caused by the negligence of another, the two wrongdoers being joint tort-feasors, it is unimportant to separate, even if it were possible, the injuries sustained as a proximate result of the separate claims of negligence of the several tort-feasors. Both are liable for the full damage. If, however, no negligence is shown against a party claimed to be a joint tort-feasor, or that even though one was shown to have been negligent but no injury proximately resulted from such negligence, no liability could follow and the attempted separation of injuries would have no legal consequence. The court, therefore, did not commit error in refusing to submit findings of fact Nos. 4 and 5, supra.

The other errors complained of have to do with the court's general charge. One of the claimed acts of negligence in the

plaintiff's petition had to do with the question of speed, the charge being that the street car was being operated at a speed of from 35 to 40 miles per hour. The record does not disclose a bit of evidence to support this claim. The court, however, in its charge to the jury, said that operating the street car at a greater speed than twenty-five miles per hour was unlawful. The plaintiff seeks to justify this statement in the court's charge on the ground that the court was explaining the allegations of negligence contained in the plaintiff's petition. Even if this were so, the court could not charge or define any claim pleaded that is not supported by evidence.

The court in so doing, committed error to the prejudice of the defendant's rights. With respect to the rest of the charge we find no error prejudicial to the defendant.

For the foregoing reasons, the judgment is reversed and the cause is remanded for further proceedings according to law. Exceptions. Order see journal.

HURD, J, THOMPSON, J, concur.