## BALTIMORE & O R R CO v DAVIDSON

Ohio Appeals, 2nd Dist, Montgomery Co

No 1282.    Decided Feb 19, 1935

Marshall & Harlan, Dayton, for plaintiff in error.

Pickrel, Schaeffer, Harshman & Young, Dayton, and E. M. Ballard, Cincinnati, for defendant in error.

### OPINION

By BARNES, J.

■ THE VERDICT IS ILLEGAL IN FORM, UNCERTAIN AND INDEFINITE:

This claimed error is based upon the fact that the verdict failed to have inserted therein the name of the defendant railway company. The body of the verdict in part read: "Do find for the plaintiff and against the defendant."

In the petition the Toledo and Cincinnati Railroad Company was joined as a party defendant, and remained such party defendant until the close of the testimony, when the trial court dismissed the action as to this defendant, and thereafter the present plaintiff in error was the only defendant. This action was taken in the presence of the jury. Furthermore, the charge of the trial court discloses that the jury were informed that they were only considering the case as against the Baltmore and Ohio Railway Company.

We find no provisions under the Code prescribing any particular form of verdict. §11425 GC of the old code, being §11420-19 GC, as amended, in substance states that the jury must assess the amount of recovery in its verdict. The question has been before the courts in this state innumerable times and in the following two cases the Supreme Court held that the verdict was illegal in form:

Fries v Mack, 33 Oh St, 52;

Kyser v Cannon, 29 Oh St 359.

A very casual reading of these cases will disclose that the verdicts were so indefinite in form as to leave undetermined by them a definite issue in the case and hence no judgment could be rendered upon such uncertain verdicts.

We have no such situation in the instant case. The verdict of the jury has definitely determined the amount and since the jury were instructed by the court that the only defendant remaining in the case was the Baltimore and Ohio Railroad Company, there could not possibly be any misapprehension upon their part, nor by any reasoning could it be concluded that the verdict against the defendant was not meant to be against the Baltimore and Ohio Railroad

Company. We find no error in this particular.

■ ERROR IN REFUSING TO ADMIT EVIDENCE OFFERED BY DEFENDANT: The defendant railroad company sought to present certain evidence tending to show that the truck driven by the decedent was loaded with such volatile combustibles or inflammable substance as required him, under the provisions of §12533, GC, to bring his truck to a full' stop not more than 50 feet nor less than 10 feet from the nearest rail of the crossing and at a point where the clearest view of approaching trains could be had. This section of the Code reads as follows:

"Sec 12533 GC. VEHICLES TRANSPORTING EXPLOSIVES TO STOP BEFORE CROSSING RAILROAD TRACKS— All drivers of horse drawn or motor propelled vehicles transporting explosives as defined in §5303-1 GC or transporting ether, carbon bisulphide, naptha, benzola, collodion, hydrocarbon (gas drips) liquified petroleum gas, acetone, alcohol, amyl acetate, toluol, amyl alcohol, turpentine, fuel oil, wet calcium cellulose, wet nitro starch, wet picric acid, wet calcium carbide, pyroxylin plastic, or other like volatile combustibles or inflammable substances, or transporting more than ten gallons of gasoline or kerosene or other motor vehicle fuel for any purpose other than supplying power to such vehicles, shall bring such vehicles to a full stop before crossing the track or tracks of any steam or·electric interurban railroad, such stop to be made not more than fifty (50) feet and not less than ten (10) feet from the nearest rail of the crossing, and at a point where the clearest view of approaching trains, locomotives or cars can be had."

The trial court, on objection, refused to permit the defendant railway company to present certain evidence in its effort to develop this theory of the defense and which might be the basis of a charge of duty to bring his truck to a full stop, and so forth.

Counsel for the railroad company apparently were not prepared to present any direct evidence as to the nature of the load on the truck at the time of the accident. It was in evidence that the truck burst into flames immediately following the collision and was entirely destroyed by the flames. There was also evidence of a red substance on the front of the engine, which witnesses first thought was blood but afterwards concluded was paint, which was burning. In the effort to present to the jury that the truck was loaded with paint at Cincinnati, it was attempted to trace a shipment from the Johnson Paint Company, of Cincinnati, to the receiving station of the Cincinnati concern for whom the decedent did hauling. At this point it might be stated that the truck was owned by the decedent and his mother. No evidence was presented that this shipment of paint was placed in the truck owned and driven by the decedent. Additional evidence was offered as to presentation of claim by the Johnson Company for shipment of paint destroyed and allowance and payment of the claim by receiving company.

We think the court was correct in its ruling in rejecting the proffered testimony.

Neither the plaintiff nor the decedent would be bound by any settlement made between the Johnson Company and the receiving company in Cincinnati, nor would any inference arise from the fact that the Johnson Company sent paint to the receiving company to be shipped to Detroit, that that shipment was placed on the truck owned and driven by the decedent. The evidence discloses that a number of trucks conveyed from this same receiving company over this same route.

In completing its record counsel for defendant presented as a witness Mr. R. R. Bowser, who operated a laboratory for chemical testing and through whom it was sought to show the flash point of each and all' of the separate items of paint claimed to have been shipped by the defendant Johnson Company. On this evidence being rejected, the proffer of proof is very complete.

An examination of this and all other admitted or proffered testimony through which it was sought to invoke the provisions of the requirements of §12533 GC, convinces us that even if the paint shipment was properly shown to be on decedent's truck, nevertheless the stop provisions of the Code would not apply for the reason that the proffered evidence fails to establish that the paint and so forth was of a quality and character that it might reasonably be inferred that it was a like volatile combustible or inflammable substance of the specific articles mentioned in the section. We find nothing in the evidence to indicate that the samples analyzed were a volatile combustible, nor do we think it can be inferred that they were inflammable substances like carbon bisulphide, naptha, benzola, collodion, and so forth. It would not be sufficient to show that the paint was combustible, but to bring it within the pro-

visions of the above section of the Code it must be shown, since paint is not specifically mentioned, that it be either a like volatile combustible or a like inflammable substance, to the ones specifically enumerated. We find no error as to the proposition No. 2.

■ ERROR IN THE GENERAL CHARGE.

It is claimed that the court erred in giving the following instruction in its general charge to the jury:

"The defendant was charged with knowing the conditions of traffic, the extent and general nature of the traffic, the obstructions, if any, that obtained there, according to the evidence shrubbery being in the southwest corner; and charged with that knowledge in the operations of its railroad."

The case of Railroad Company v Kistler, 66 Oh St, 326, syllabus 7, is cited as supporting the claim that shrubbery off the right of way is not a circumstance to be considered by the jury in determining the questions of negligence.

Counsel for plaintiff administratrix cite the case of Weaver v Railway Company, 76 Oh St, 164, as authority supporting the charge of the court as given.

We think the two cases may readily be reconciled. In the Kistler case the accident was in the country, at a grade crossing, and the view of the crossing was obstructed by weeds and so forth, off the right of way. The negligence complained of was the speed and operation of the train and not in any sense failure to guard the crossing.

In the Weaver case, supra, the collision occurred within the limits of a municipality and under these circumstances the rule is well recognized that at dangerous crossings there may be the duty to guard by watchmen, gate or lights where no such requirement would be made in the country. We do not find any prejudicial error in this portion of the general charge. Railway Co. v Schneider, 45 Oh St, 678.

Complaint is also made to the court referring to §8852 GC, which requires railroad companies to erect a sign of large and distinct letters at railroad crossings to give notice to the travelling public of the proximity of a railroad.

There was no claim made by the plaintiff administratrix that the railroad had failed to erect signs, as required by the Code. The only purpose of the court in referring to this section was in order to advise them that this alone would not relieve them of all responsibility and also that the decedent thereby had a warning of the presence of the railroad and should act accordingly. We find no prejudicial error in this part of the charge.

Objection is also made to the charge of the court shown on page 231 of the record, relative to the city ordinance preventing the blowing of train whistles within the city limits. The court in his oral charge to the jury may have been a little unfortunate in the use of his language, wherein he says to the jury:

"You will take into consideration the existence of this ordinance in determining whether or not it was the duty of the company to blow a whistle there."

but all possible error was immediately removed when the court followed with this expression:

"The court saying that the ordinance would prevail in this instance."

The language following properly conveys to the jury the idea that where the blowing of whistles is prohibited by ordinance, that does not relieve the railroad company from using such care as would be necessary taking into consideration the conditions and circumstances then existing. We think this is a direct pronouncement of the law where the city in the exercise of its police powers enacts an ordinance prohibiting the blowing of whistles, which was one of the means that the railroad company previously employed to warn traffic of approaching trains, it may devolve upon them thereafter to evolve new and additional means of protecting their crossings.

We find nothing objectionable in that part of the court's charge wherein the court instructed the jury that the legal obligation rested upon decedent to do everything which ordinary care would have required him to do and to do anything which ordinary care would not permit him to do. Following further the court said.

"If he saw the train approaching then he was required to conduct himself as a person of ordinary care would have done, and if a person of ordinary care, seeing the train approaching, would not have attempted to cross the track, it was his duty not to cross it, and if he did cross it, under those conditions and that limitation, it would be negligence."

Following in the next paragraph, the court continued:

"The court says to you that if he saw the train approaching, it was his duty to

stop, look and listen, and not to attempt to cross in front of the train, unless a person of ordinary prudence judging the movement of the train, would have so attempted, and in that connection, the court says that he had the right to presume that the train was moving in accordance with the law; that it was not violating the speed required by law, and had a right to conduct his action as if the train was being conducted legally and properly."

It was be conceded that it was not necessary for the court to charge the jury on this subject, since there was no evidence from which it could be inferred that the decedent saw the approaching train, but we find nothing prejudical therein. In other parts of the court's charge the duties and obligations of the decedent were properly presented.

As a general proposition it is not the law of Ohio that traffic must stop before crossing a railroad track. There is the well defined obligation to look and listen. Generally it is for the jury to determne whether or not the situation as it existed was such as to require the individual to stop.

We will discuss errors 4 and 5 together.

■ THAT THE VERDICT GIVEN IN THIS CASE IS CONTRARY TO THE WEIGHT OF THE EVIDENCE; IS NOT SUSTAINED BY ANY EVIDENCE; CONTRARY TO LAW AND THE CHARGE OF THE COURT GIVEN IN THIS CASE.

■ ERROR OF THE COURT IN OVERRULING MOTION OF THE BALTIMORE AND OHIO RAILROAD COMPANY FOR A DISMISSAL.

Under the state of the record we think the jury would be warranted in finding that the defendant railroad company was negligent in some one or more of the claimed acts of negligehce as set forth in the third amended petition. Plaintiff's Exhibit B attached to the bill of exceptions is a photograph of this crossing, showing part of the street and a considerable portion of the railroad right of way. We at once visualze this as a dangerous crossing. The privately owned residence comes out very close to the right of way. A very large telephone pole stands at the corner of the lot. Rather tall shrubbery obstructs the view between the telephone pole and the residence. The railroad tracks cross the highway at an angle. Decedent was travelling north and the residence, shrubbery, telephone pole and the angle of the track prevented a clear view of the approaching train until the decedent was within 10 to 25 feet of the track. At 10 feet he would have a view of something like 2400 feet, and at 25 to 30 feet, the view down the track would be limited to about 100 feet. This would be due to the angle of the right of way. The train involved in the accident was on the main southerly track. The accident happened near midnight, and while there were gates constructed at the crossing, they were only operated until about 10 o'clock at night. There was no automatic bell nor anything at the crossing to warn of the approaching train. The head light on the engine was burning brightly; the automatic bell on the engine was ringing. Many witnesses testified to the blowing of whistles for a crossing; others in equally favorable positions, heard no whistles. There was evidence presented on behalf of the plaintiff fixing the speed of the train at from 50 to 60 miles per hour. Defendant presented evidence of a speed of about 25 miles per hour. The train stopped within a very short distance after the accident, and this is very substantial corroboration as to speed. There being no interrogatories submitted to the jury, we are not advised as to the specific act of negligence that they found against the railroad company. We deem it unnecessary to go into any lengthy discussion more than to say that we feel that the evidence is sufficient to sustain some one or more of the acts of negligence as claimed by the plaintiff.

In determining the question of contributory negligence on the part of the decedent, we have our greatest trouble.

The courts of Ohio have held rather rigidly to the rule requiring operators of vehicles upon approaching crossings at grade with which they are familiar, to look and listen and to do so at such time and place when looking and listening will be effective.

As bearing on the question of contributory negligence counsel for the defendant Railway Company cite the following cases:

C. C. C. & St. L. R. R. Co. v Lee, Admr., 111 Oh St, 391.

Toledo Terminal R. R. Co. v Hughes, 115 Oh St, 562.

C. C. C. & St. L. R. R. Co. v Elliott, 28 Oh St, 341.

Ry. Co. v Kistler, 66 Oh St, 326.

R. R. Co. v Heck, 117 Oh St, 147.

R. R. Co. v Rusynik, 117 Oh St, 530.

Buell, Admr. v R. R. Co., 114 Oh St, 40.

B. & O. R. R. Co. v Goodman, 275 U. S., 66.

B. & O. R. R. Co. v McClelland, 69 Oh St, 142.

C. D. & M. Electric Co. v O'Day, 123 Oh St, 638.

Penn. R. R. Co. v Moses, 125 Oh St, 621.

D. T. & I. R. R. Co. v Rohrs, 114 Oh St 492.

All of the above are crossing cases and while some are not particularly helpful on account of the substantial difference in their facts, yet all have a bearing on the question of contributory negligence.

Counsel for plaintiff administratrix cite the following cases as bearing on their conception of the law on the issue of contributory negligence:

Morris v Jones, 110 Oh St, 598.

Crunkemeyer v R. R., 3 Oh Ap, 62.

R. R. v Landigan, 191 U. S., 461.

Roeter v Pennsylvania, 195 Fed., 21.

Emens v Ry., 223 Fed., 810.

T. P. v Gentry, 163 U. S., 353, 366.

Erie v Linguist, 27 Fed. (2d.) 98.

Porkora v Wabash, 292 U. S., 98.

We have examined very fully each and all of the cases cited. It is a principle well recognized that we must follow the Supreme Court of our own state where it has spoken, and if analogous in its facts. It is only natural that each case will have some variance in its facts to the reported cases. In other words, there are no two cases exactly alike unless perchance they grow out of the same controversy.

In several of the above cited cases we find the court referring to the fact that the injured person or decedent was familiar with the crossing.

This of course is a relative term and is measured by varying degrees of knowledge or familiarity with the crossing, depending upon the facts of each case. A careful search of the record fails to disclose any direct evidence that the decedent had ever encountered this crossing previous to the night of this collision resulting in his death. We do not believe there is any evidence from which it is fairly inferable that he had ever crossed the railroad at this point before the night of the accident. The evidence on this proposition will rise to no higher dignity than a mere guess, and we say this notwithstanding the fact that counsel for the plaintiff administratrix in their brief make the statement that the decedent was familiar wth this crossing. Counsel made this observation in connection with their argument relative to the maintained gates at this crossing and the lack of knowledge that they were not operated after ten o'clock at night. The accident happened approximately at 12:00 midnight.

The evidence does disclose that decedent resided in Detroit, Michigan; that he and his mother jointly owned the truck involved in the accident; that he had been trucking between Detroit and Cincinnati for five months, making the route about two times per week.

The route out of Cincinnati was on U. S. 25 as shown by the direct evidence of the driver of another truck, and he says that they passed each other three or four times between Cincinnati and Dayton. The last instance was at Moraine City, just south of Dayton and on U. S. 25. This truck driver witness stated that to his knowledge trucks out of Cincinnati left U. S. 25 at the southerly edge of the city of Dayton and did not follow any marked highway through the city. He said this detour route avoided the hills in Oakwood, and further that the residents of Oakwood objected to the heavy trucks going through its residential district. There was no evidence of any legislative action prohibiting following U. S. 25 through Oakwood, etc. The fact that the decedent was taking this detour route on the night of the accident might fairly lead to the inference that he had received the information from some source that it was the better route through the city of Dayton, but that inference could not be extended to the conclusion that he had continuously for five months been going over this route, nor even that he had ever traveled it before.

It therefore follows that there is an absence of proof that the decedent was familiar with this railroad crossing.

The evidence to the effect that the decedent, as he approached this crossing slowed down and changed his gears as testified to by one witness, and that he stopped, according to the testimony of another, leaves no other inference than that the decedent knew he was approaching this grade crossing. This was evidence of a certain degree of care, but whether or not it measured up to the conduct of the ordinary prudent person is the vital question, and always controlled by all the attending circumstances and surrounding conditions. There is a combination of conditions which rendered this crossing extremely dangerous. The residences, shrubbery and poles obstructed the vision until very close to the southerly track. (See photograph, Plaintiff's Exhibit B). The right of way had four tracks. Therefore the outer track on the southerly side was only about ten feet from the property line.

This right of way and the tracks run in a general southwesterly and northwesterly direction. As we interpret the plat, plaintiff's Exhibit A, it was more south than west and more north than east. This train was made up at Cincinnati and approached

this crossing from that general direction. The circumstances that this train was approaching on the southerly track from a southwest direction very substantially hindered the vision. A street car track ran parallel and adjacent to the railroad right of way for a distance of about one square, and then by a curve entered Broadway, and extended south in the center of the street. (See plaintiff's Exhibits C and B). Immediately before the accident the street car was approaching Broadway from the northeast. It had its headlight burning. It was coming towards the truck which decedent was driving. It is among the possibilities that this approaching street car, with its headlight burning, in such close proximity to the railroad tracks, to his mind was an approaching danger that demanded a degree of attention. While there was a street light on Broadway and to the north of the railroad tracks, it did not light up the surrounding territory very brilliantly. Constructed gates were at this crossing, but under the practice they were only operated until ten at night. The decedent may or may not have known of this condition. There were no lights or gongs or other devices indicating the approach of this train. The only warning of its approach was the train itself with its electric headlight and automatic bell. As to whether or not the whistle was blown at the crossing is a matter in dispute.

The driver of the truck having been killed we do not have the advantage of his testimony. The instant case is distinguished from many of the cited cases in this particular; in most of these cases the contributory negligence of the driver of the vehicle was based on the testimony of such driver. We find the Supreme Court making the statement in several cases that accepting the situation as the plaintiff stated it, and the time of looking and listening, together with speed of their vehicle and unobstructed view, it could be figured to a demonstration that plaintiff's theory could not be accepted. In these cases the court says, if the plaintiff looked and listened at the time he says he did he must have looked very carelessly, for the train was there to be seen.

In the instant case we must indulge every presumption in favor of the verdict. We must likewise indulge the presumption that the decedent was not guilty of negligence and we can only so determine when from a consideration of all uncontradicted testimony it appears that reasonable minds could arrive at no other conclusion. So far as possible we must distinguish between the static conditions as presented in the photographs (exhibits) and the moving panorama as confronted the decedent.

Considering all the attending circumstances surrounding this accident at this very dangerous crossing particularly at night, we are unable to conclude that the decedent is shown to be guilty of negligence as a matter of law, nor do we feel that the finding of the jury was against the manifest weight of the evidence. We have purposely refrained from quoting at any great length from the cited cases for the reason that the real picture could only be obtained by reading each case in its entirety. We think that the opinion of Justice Cardoza of the United States Supreme Court in the case of Pekora v Wabash R. R. Co., 292 U. S., 98, is very illuminating on the question of contributory negligence, and is very helpful in determining the line between such negligence as a matter of law, and when a jury question. The case of **B. & O. R. R. Co. v Heck, 117 Oh St, 530,** has some important similar facts to the instant case. On page 151 Judge Robinson, speaking for the court, makes the following statement:

"While the facts in this case are not such as to warrant a court in declaring as a matter of law that the decedent was guilty of contributory negligence, they are such as to require the court to give to the jury * * *."

Finding no prejudicial error the judgment of the lower court will be affirmed.

Exceptions will be allowed to plaintiff in error.

Entry may be drawn accordingly.

KUNKLE, PJ, and HORNBECK, J, concur.