**HARDWARE MUTUAL INSURANCE COMPANY, Plaintiff, v. McGINNIS et, Defendants.**

Common Pleas Court, Fayette County.

No. 21578. Decided May 14, 1954.

Wiles & Doucher, Columbus, for plaintiff.
Arthur M. Sebastian, Columbus, Otis B. Core, Washington C. H., for defendants.

## OPINION

By CASE, J.

This cause is before the court at this time upon Defendants' motion to make definite and certain and to strike certain allegations from Plaintiff's petition. Said motion and Defendants' memorandum in support thereof were filed on March 19, 1954, and Plaintiff's memorandum contra thereto was filed on April 6, 1954.

Branch I(a) of said motion seeks to have the word "guilty" stricken from the third paragraph of Plaintiff's petition.

In support of branch I(a), Defendants' memorandum contends:

"(a) The use of the word 'guilty' in a civil case is improper and prejudicial." **Obrecht v. Tallentire, 43 Oh Ap 376.**

Plaintiff's memorandum contra thereto states:

"The first branch of the motion of the defendants has to do with the descriptive word of 'guilty' and we feel that it is descriptive of what the defendant failed to do and advises the defendant what the claims of the plaintiff are in regard

to the violation of the law and therefore it being purely descriptive, we think that the first branch of the motion should be overruled."

In the case of **Obrecht v. Tallentire, 43 Oh Ap 376, 13 Abs 218, 183 N. E., 295**, the Court of Appeals for Ashland County held, among other things, that:

"4. Word 'guilty' should not be used in defining negligence, not being synonymous therewith."

It is clear that Defendants' objection is directed to prejudicial conclusions and inferences arising out of Plaintiff's use of the word "guilty" as related to and connected with four specifications of negligence set forth immediately thereafter in said third paragraph.

Plaintiff has failed to cite any authority in support of its contention that the word "guilty," as used in said petition, "is descriptive of what defendant failed to do."

This Court is in accord with and subscribes to the pronouncement of the appellate court in Obrecht v. Tallentire, supra; and is of the opinion that such use of the word "guilty" clearly affects more than a mere characterization or description of the acts complained of to such a degree and extent as to be tantamount to a conclusion which is unduly prejudicial. For the reasons above set forth, this Court is of the opinion that branch I(a) of Defendants' motion is well made and should be sustained.

Branch I(b) of Defendants' motion seeks to have the entire second specification of negligence stricken from Plaintiff's petition.

Said specification is set forth in Plaintiff's petition as follows:

"The plaintiff says that the defendants were guilty of negligence, which negligence was the direct and proximate cause of the damage to the building of W. W. Williams. doing business as Jeffersonville Auto Company, in the following particulars, to-wit:

*　　　*　　　*　　　*

"2. In failing to have their motor vehicle under control at said time and place to avoid a collision with said train."

Defendants' memorandum, in support of branch I(b), contends:

"(b) The second specification of negligence is a pure conclusion of law. There are no operative facts set forth upon which this allegation is based."

Plaintiff's memorandum contra the aforesaid branch I(b) states:

"The second branch has to do with the striking from the

petition of the second specification of negligence and we wish to state that there are operative facts in the petition which indicate the defendant did not have his vehicle under control and collided with the train and it would be evidence adduced at the time of the trial, of course, to determine whether or not this fact actually existed at the time of this occurrence and, therefore, this branch of the motion should be overruled."

In **31 O. Jur., 552, et seq.,** it is stated:

"It is a fundamental principle that a pleading should state facts and facts only, and not mere legal conclusions or conclusions of law or the conclusions of the pleader, otherwise, the opposite party cannot know with any certainty, from the averments of the pleading, what he is required to meet; it is the duty of the court to declare the conclusions and of the pleader to state the premises. It is said to be the positive duty of the pleader to avoid pleading mere legal conclusions or mere conclusions; allegations which stand as mere averments of legal conclusions are, as a pleading, of no legal effect or significance, and are generally ignored in the construction and consideration of the pleadings of which they are a part. * * *"

and, under **Section 23 (31 O. Jur.)** beginning at **page 557,** it is stated in part as follows:

"The line of demarcation between allegations of facts and allegations which are objectionable as mere legal conclusions is not easy to state, although the reports are interspersed with numerous statements concerning whether particular allegations are objectionable as legal conclusions; it is thought that the best assistance to the pleader will be given by a summary of particular allegations that have been passed upon by the courts.

"The following allegations have been declared to be statements of conclusions of law, or legal conclusions: * * * that 'by the exercise of ordinary care and prudence' one could have avoided an accident; * * *"

It is axiomatic that, in an action for negligent injuries, the petition must show a legal duty owing from the defendant to the plaintiff, defendant's breach of that duty and injury to plaintiff proximately resulting from such breach. The rules of good pleading require that such duty must be shown by the allegation of ultimate or operative facts from which the law will imply the duty so owing rather than by direct averment of such duty. If the ultimate or operative facts alleged disclose such duty, then it is neither necessary nor proper to allege the legal conclusion that the duty existed. Since the pleading

is addressed to the court, it becomes the duty of the court to apply the law to the operative facts.

In **Railroad v. Kistler, 66 Oh St 325,** the Supreme Court of Ohio held, among other things:

"2. In an action founded upon negligence, the petition should state the acts of commission or omission which the plaintiff claims to have caused the injury; * * *"

In the light of all facts otherwise alleged in Plaintiff's petition, it is clear that Plaintiff's second specification of negligence stands as a mere averment of a legal conclusion which is improper and unduly prejudicial.

In the case of **Klatt v. Industrial Commission, 28 Abs 323,** our court of appeal has held that—"It is improper to plead evidence, conclusions and inferences; * * *"

With respect to the use of specifications of negligence, this Court deems it pertinent to note the following comments of Judge Bell upon granting a similar motion to strike in the case of **Brown v. Pollard, 51 O. O. 214, 66 Abs 253, 112 N. E. (2d), 692:**

"Counsel for plaintiff has stated in his memorandum that 'it has long been a form of good pleading to separately state and number different specifications of negligence.' This court cannot agree that it constitutes good pleading. I realize that due to the tolerance by courts, both trial and review, of the practice of setting out specifications of negligence they have received some measure of respectability in pleading, to the extent even that they are included in some of the form books. But I am also firmly convinced that in the vast majority of cases in which they are used they are unnecessary and in many cases improper. Such specifications can be intended for but one of two reasons: either they are designed to influence, perhaps prejudice, a jury; or they are intended to inform the court of what he is expected to charge. If for the former reason, they are improper; if for the latter, they are in most cases unnecessary.

\* \* \* \*

"Specifications of negligence such as appear in this petition (although no more so here than in the vast majority of cases) are an open invitation to opposing counsel to move to strike them. And thus they become a gateway through which enters much of the criticism of 'too much delay' that is often directed, with considerable justification, at the legal profession."

This Court is in accord with and subscribes to the comments and reasoning of Judge Bell as quoted and set forth above. For all of the reasons hereinabove set forth and discussed, this Court is of the opinion that branch I(b) of De-

fendants' motion to strike is well made .and should be sustained.

Branch I(c) of Defendants' motion seeks to have the entire third specification of negligence stricken from Plaintiff's petition.

Said specification reads as follows:

"3. In failing to stop their motor vehicle and yield the right of way to said train at said time and place."

Defendants' memorandum in support of branch I(c) contends:

"(c) The third specification of negligence is another conclusion of law. The petition is to be composed of statements of ultimate fact and not conclusions. If the evidence upon the facts alleged in the petition is such as to raise a question of right-of-way, the court will charge upon that subject. Right-of-way is not an absolute right, but is conditioned upon lawful operation by the party claiming the right-of-way. There are no facts alleged in the petition raising any question of right-of-way.

"Furthermore, there are no operative facts set forth, the existence of which would require the driver of the motor vehicle to stop."

Plaintiff's memorandum contra the aforesaid branch I(c) states:

"The third and fourth branches of the motion are of a similar character. The plaintiff has set forth operative facts, that is, the manner in which the collision occurred and the resulting damage to the premises of the plaintiff's insureds and, of course, there will have to be evidence adduced at the time of the trial to prove the allegations contained in the petition resulting from the operative facts pleaded and the defendant is here asking the Court to rule on something that is not at issue at the present time and that is whether or not there is any evidence to sustain the allegations of negligence on the part of the plaintiff and, under the situation as it is at the present time, the Court should overrule these two branches of the motion. If, at the trial of the case the plaintiff is not able to adduce evidence to sustain the allegations of negligence, then the motion to strike would be fit and proper but as pleaded, if proven, they would be determinative issues for the jury on the question of whether or not the defendant was guilty of negligence in the matter stated and if they were the proximate cause of the accident."

In 34 O. Jur., at pages 788 and 789, it is stated:

"1093. Reciprocal Rights and Duties of Public and Railroad.—The rights and duties of a railroad company to use

of its road at a crossing with a highway and those of the traveling public to the use of the highway are co-ordinate and equal; neither has an exclusive right of passage. Both the railroad company and the public have the right to the use of their respective rights of way and the highway, and each must act with reasonable care and prudence and must not interfere unnecessarily with the use by the other.

"Despite this reciprocal and equal right of a railroad company and the public at crossings, it is still true that as between a person about to cross over a railroad at a crossing and a train of cars approaching such crossing the train has the right of way. This is so because the person can stop within a few feet, whereas the train cannot. This difference in the use made by the traveler and by the train is such as to constitute a difference in right, and it is error merely to charge the jury without qualifications that the rights and duties of the railroad company and the traveler are mutual and reciprocal. A charge prescribing the rule of conduct for one approaching the crossing, but failing to make a statement concerning the possible negligence of a plaintiff in going upon a crossing before a rapidly approaching train, has been held to be incomplete, but not substantially prejudicial.

"A railroad company, however, has no greater rights to a crossing than the traveler, except the right to priority of passing, and it has no right to do any act which will mislead a traveler and expose him to needless danger."

In 44 American Jurisprudence, at pages 733 to 735, it is stated:

"495. Reciprocal Rights and Duties of Railroad Companies and Public.—The obligations, rights, and duties of railroads and travelers upon highway crossings are mutual and reciprocal; neither has an exclusive right of passage. The railroad has the right to use its tracks, and the public have the right to use the crossing, and each should act with due regard for the rights of the other. The trainmen should accommodate the traveler when it can be done with safety, and the traveler should respect the rights of the trainmen and not attempt to subject them to unnecessary or unreasonable trouble or inconvenience. Both parties are charged with a mutual duty of keeping a careful lookout for danger; and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty. Neither is relieved from the duty of carefully watching the crossing to avoid accidents by the assumption that the other is doing his or its whole duty at such a place, and each has a right to assume that the other will be controlled by such considera-

tions as would influence the conduct of men of ordinary care and prudence. Each must exercise care commensurate with the risk and danger involved; the greater the danger, the greater the care required of both.

"But while the relative rights and obligations of a railroad company and travelers on the highway are reciprical, it is the privilege of the railroad company that its trains shall have the right of way, and that all persons on the highway shall yield precedence to the trains. From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it shall stop and give precedence to an approaching traveler to make the crossing first; the traveler must yield the use of the railroad track to an approaching train, and the conduct of the train crew may be lawfully predicated upon the expectation that travelers will observe their duty in this regard. This rule applies also to streetcars crossing steam railroads. It is not the duty of the railroad company to have its trains under such control as to be able to stop and avoid a collision. On the other hand, the train should not stop on the crossing, or, by moving backward and forward, subject the traveler to unreasonable delay in crossing after the train has first passed. The right of the public in a highway crossing a railroad is simply a right of passage across the railroad. The highway crossing is for the purpose of passage from one side of the railroad to the other, and any other use thereof. whether between the tracks or between the rails, is unwarranted."

In the light of the legal principles as discussed and referred to in the above quotations and the pertinent court decisions cited with respect thereto, it is clear that Plaintiff's third specification of negligence states a legal conclusion which implies that said train had an exclusive and absolute right of way at said crossing, and that said train crew had no duty to use any degree of care to prevent injury at said crossing.

It is equally clear that Plaintiff's third specification of negligence also implies that the law imposes an absolute and unqualified legal duty upon Defendants to yield said right of way to said train without any consideration or regard for surrounding facts and circumstances then and there existing.

It is also of pertinent interest to note at this point the following comment and authority cited by United States Circuit Judge Martin in the case of **Detroit, Toledo & Ironton Railroad Co. v. Yeley, 39 O. O. 49** (at **pages 53 and 54**), 165 F. (2d) 375, 380:

"\* \* \* A railroad company does not have the exclusive right of way at a street crossing. Texas & P. R. Co. v. Cody, 166 U. S., 606, 17 S. Ct. 703, 41 L. Ed., 1132; 44 Am. Jur., Section 493.

"In **Robinson v. Pennsylvania R. Co, 117 Oh St 43, 58, 158 N. E.,** 83, 88, decided after the Rhors case, Judge Allen, now of this court, writing then for the Supreme Court of Ohio, in upholding a verdict for the plaintiff in an action based upon a collision between a railroad train and an automobile at a grade crossing, said: 'While an automobile driver rests under the duty of looking and listening before he crosses a railroad track of whose existence he is aware, it is not as a matter of law his absolute and unqualified duty to stop before he goes upon such railroad track unless his looking or listening discloses the presence of a moving train.' "

As hereinabove cited, in the case of **Klatt v. Industrial Commission, 28 Abs 323,** our court of appeals has held that it is improper to plead evidence, conclusions and inferences; and, it appearing that Plaintiff's third specification of negligence is a conclusion of law which is improper and unduly prejudicial, therefore, it must be concluded that branch I(c) of Defendants' motion to strike is well made and should be sustained.

Branch I (d) of Defendants' motion seeks to have the word "stop" stricken from the fourth specification of negligence in said petition.

Said specification reads as follows:

"4. In failing to stop, look and listen where it was effective before attempting to cross said railroad tracks, at said time and place."

Defendants' memorandum in support of branch I(d) contends:

"(d) As stated in the preceding paragraph, there are no operative facts set forth in the petition showing any duty on the part of the driver of the motor vehicle to stop at the railroad crossing. There is no common law duty to stop." **Baltimore and Ohio Railroad v. Davidson, 19 Abs 406.**

Plaintiff's memorandum contra branch I(d) has been quoted and set forth above in this Court's consideration of branch I(c) of said motion.

In the case of **Baltimore & O. R. R. Co. v. Davidson, 19 Abs 406,** the Court of Appeals for Montgomery County (which is also the Court of Appeals for Fayette County) held, among other things:

"8. There is a well defined obligation on traffic to look and listen before crossing railway tracks, but it is not the law

of Ohio that traffic must stop under such circumstances; generally it is for the jury to determine whether or not the existing circumstances required an individual to stop." and, at page 411 thereof, the court stated in part:

"As a general proposition it is not the law of Ohio that traffic must stop before crossing a railroad track. There is the well defined obligation to look and listen. Generally it is for the jury to determine whether or not the situation as it existed was such as to require the individual to stop."

Therefore, it is clear that our court of appeals has expressly held the law of Ohio to be in accord with the proposition stated by Judge Allen in the case of **Robinson v. Pennsylvania R. Co., 117 Oh St 43, 58, 158 N. E., 83, 88,** wherein it was stated:

"While an automobile driver rests under the duty of looking and listening before he crosses a railroad track of whose existence he is aware, it is not as a matter of law his absolute and unqualified duty to stop before he goes upon such railroad track unless his looking or listening discloses the presence of a moving train.* * *"

It is equally clear that Plaintiff's use of the word "stop," as set forth in said fourth specification of negligence, implies that the law imposes an absolute and unqualified legal duty upon Defendants to stop before attempting to cross said railroad tracks and that such duty precludes any consideration or regard for surrounding facts and circumstances then and there existing.

It is equally obvious that the law of Ohio does not impose such absolute and unqualified duty; that the use of the word "stop" as averred in said specification of negligence states a legal conclusion which is unduly prejudicial; and that, by reason thereof, the word "stop" should be stricken from the fourth specification of negligence.

Branch II of Defendants' motion seeks to have said petition made definite and certain by requiring Plaintiff to state therein:

"I. The relationship it claims between the two defendants.

"II. Which of the defendants it claims was driving the motor vehicle."

Defendants' memorandum in support thereof contends:

"We are well aware of the fact that the Court of Appeals of this district has held that it is possible for two persons to be operating a motor vehicle. Nevertheless, the Court has not held that defendants are not entitled to have a petition made definite and certain when it is couched in the language used in this petition. The plaintiff knows that a master and servant relationship existed between the two

defendants. If the plaintiff alleged the facts it knows that there would be a misjoinder of parties upon the face of the petition. The defendants are certainly entitled to know what the plaintiff is claiming, as to the relationship between the two defendants and to know which of the two defendants plaintiff claims was actually operating the motor vehicle."

It does not appear that Plaintiff's memorandum contra sets forth any particular contention with respect to those grounds urged and relied on in branch II of Defendants' motion.

It is assumed that the appellate court decision referred to in Defendants' memorandum was the case of **Davis v. Montei et al., 38 Abs 147, 49 N. E. (2d), 584.** According to the head-notes to that case, as reported in 49 North Eastern Reporter, 2d Series, the Court of Appeals for Franklin County (which is also the Court of Appeals for Fayette County) held:

"1. In action for damage to automobile colliding with automobile owned by one of four defendants, petition was not defective because it charged all defendants with negligence in operation of automobile.

"2. Dismissal of petition because of plaintiff's refusal to amend it, as ordered by court, was 'final order,' correctness of which reviewing court will determine on appeal.

"3. In action for damage to automobile colliding with automobile owned by one of four defendants, court erred in dismissing petition on plaintiff's refusal to amend it by stating which defendant had actual physical control of defendant's automobile, relationship of defendants, and facts showing joint enterprise among them, though more detailed allegation of facts would have disclosed that some of defendants were not negligent."

Beginning at page 585 (49 N. E. 2d), the appellate court stated in part as follows:

"Defendants interposed motions on behalf of each of the defendants, and all identical in language. The motions in substance ask that specifications of negligence 1, 2, 3 and 4 be stricken. As an alternative it was requested that if either of the above requests be overruled then an order requiring plaintiff to make the petition more definite and certain by stating (a) which defendant plaintiff claims had actual physical control of the Buick automobile; (b) the relationship claimed by plaintiff to exist between each defendant: (c) if it is claimed that a joint enterprise existed, by stating the facts to show such joint enterprise.

"The trial court sustained defendants' motions, and plaintiff was ordered to amend the petition. Counsel for plaintiff declined to make the amendment ordered by the court, and

thereupon the court dismissed plaintiff's petition without prejudice. This is the final order from which plaintiff gives notice of appeal.

"The sole and only question for our determination is whether or not the court was in error in dismissing plaintiff's petition for failure to amend, as the trial court had previously decreed.

"Apparently the trial court was of the opinion that the petition was defective wherein it charged all defendants with negligence in the operation of the Buick car. A pertinent part of the journal entry reads as follows: 'The court finds that said motion is well taken in that: but one person can operate a car, and that in the defendant's car were minors and in order to hold the occupants of the defendant's car liable with the operator it would be necessary to show a common enterprise or agency.'

"We are inclined to think that it is incorrect to say that only one person can operate a car. We can agree that this would be the correct method of operation, but it is physically possible for more than one to participate in the operation. For obvious reasons we refrain from giving examples of how two, three or four persons might all be actually participating in the physical operation of the automobile. These very acts of multiple participation would probably be negligence within themselves. The details of alleging which one performed the various acts which constituted the operation, would be evidential. We will venture the guess that plaintiff would probably find it impossible to produce the evidence supporting his allegations of multiple operation, but as a matter of pleading we do not think it defective, particularly when we find that such a situation is possible.

"Counsel for defendant in his brief makes the claim that in order to constitute a joint liability it would be necessary to allege and prove a joint enterprise. In his brief he makes the broad statement that the rule is so well recognized that no citation of authorities is necessary.

"In a cursory, independent examination we are led to the conclusion that there is very serious doubt as to whether or not the facts of a joint enterprise are required to be pleaded, where there is the allegation of joint operation. We do find that there is an abundance of authority upon the proposition that the trial court should not charge on the question of joint enterprise unless properly in the case through evidence.

"We are not basing our conclusions on the theory of joint enterprise.

*      *      *      *

"Counsel for defendant-appellee argue that an allegation of facts in more detail would at once disclose that some of the defendants at least were in no sense guilty of any negligence and that they should not be put to the bother of being continued in the litigation. This is true of any defendant when improperly sued, but the courts have found no means of avoiding plaintiff's filing unfounded actions, except through judgments and the penalty of costs.

"We are constrained to the view that the trial court was in error in dismissing plaintiff's petition. It is highly probable that plaintiff would have difficulty in presenting proof. If and when that time comes, the Court can dismiss as to other defendants against whom no evidence is presented, or require an election if a state of facts is such that joint action may not be prosecuted."

Upon due consideration, we must conclude that the case of Davis v. Montei, supra, is authority for the proposition that a petition sounding in negligence is not defective merely because it claims that two defendants participated in the physical operation of a motor vehicle; and that a motion to make definite and certain, by requiring plaintiff to state (a) the relationship between said defendants and (b) which of said defendants was driving such vehicle, should be overruled when the allegations contained in said petition do not contravene the possibility of such a situation.

In the light of the foregoing decision by our Court of Appeals, this Court is constrained to the view that the legal principles so determined and pronounced by the appellate court are controlling and dispositive of all the issues raised by branch II of Defendants' motion at this stage of the litigation in the case at bar. Therefore, branch II of Defendants' motion herein is not well made and should be overruled.

For all of the reasons hereinabove set forth and discussed, this Court finds that branches I(a), I(b), I(c) and I(d) of Defendants' motion herein should be sustained; and that branches II(I) and II(II) of said motion should be overruled.

The Court further finds that Counsel for Defendants should prepare an entry accordingly with appropriate notation therein of exceptions on behalf of Plaintiff and Defendants and thereupon submit same to Counsel for Plaintiff and to this Court for approval within fifteen (15) days; and that Plaintiff should be granted leave to file an amended petition by, on or before July 1, 1954.