Allen, J.
 

 Tbe Court of Appeals reversed the judgment of tbe court of common pleas for error “in tbe refusal of tbe trial judge to charge tbe jury before argument as requested by tbe plaintiff in error in written propositions No. 1 and No. 4, no other errors urged by tbe plaintiff in error being considered or passed by tbe court.”
 

 Request No. 1 and request No. 4, for omission to give wbicb tbe judgment was reversed, read as follows:
 

 I. “Tbe court says to you that tbe law required Ralph N. Robinson, plaintiff’s decedent and driver of tbe automobile on tbe night in question, to have his machine under such control that tbe machine could be stopped or otherwise avoid obstructions and dangers within the area lighted by its headlights.”
 

 IV. “Tbe court says to you, as a matter of law, that the operator of a locomotive has tbe right to presume, assume, and rely upon the fact that an operator of an automobile approaching a railroad'
 
 *46
 
 crossing will stop before he goes upon the track, or in such close proximity to the track that his machine will be struck by the locomotive or any other part of the train, and the law, under the evidence in this case, did not require the engineer in charge of this train to make any application of the brakes on his engine or train because he saw the headlights of an automobile showing across the track on which the train was being operated.”
 

 Evidence was given at the trial tending to establish the following facts:
 

 Upon July 8, 1921, at about 1 o’clock in the morning, Ralph N. Robinson was killed while crossing the tracks of the Pennsylvania Railroad Company in the village of Atwater, Portage county, Ohio. At the time, Robinson was driving a Hudson sport model four-passenger car, in which his wife was also a passenger. Mr. and Mrs. Robinson upon that particular night were returning to Youngstown, Ohio, from Cleveland. As they were passing through the village of Randolph, before they reached the village of Atwater, Robinson told Ms wife that they were in the village of Atwater. Mrs. Robinson had never driven this route before, and testified that she did not know that Robinson had ever driven it before. From these facts the jury may have found that Robinson was at least relatively unfamiliar with the route. The Robin-sons approached the railroad where the accident occurred, from the west. At the point of the accident the railroad tracks run in a substantially northerly and southerly direction, crossing at grade the east and west improved highway which runs through the village of Atwater. The crossing is
 
 *47
 
 practically at right angles. At a point 300 feet west of the railroad track the highway is approximately 5 inches higher than the railroad track, at the point where the accident occurred. Some 200 or 300 feet west of the grade crossing the, highway is traversed by an electric railway track. About 90 feet west of the railroad track the highway is 14% inches higher than the railroad track, and from this point to the first rail of the railroad there is a gradual decline in the highway. The railroad tracks at the time of the accident were about level with the surface of the highway, and there is testimony in the record upon the part of a resident of the immediate vicinity to the effect that a stranger approaching this grade crossing in the nighttime would not be aware of the existence, of the railroad crossing at the point in question. There are certain stores, houses, buildings, and trees north of the highway and west of the railroad. One railroad sign, indicating the presence of a railroad track, at the time of the accident lay to the east of the railroad and north of the highway, but the testimony given by two residents of the immediate neighborhood tended to show that this sign was at least partially obscured to a view from the west by the large branch of an elm tree. There was no railroad sign indicating the presence of a track to the west of the railroad track. The train which struck the automobile was being operated from north to south, and the Robinsons approached the railway from the west.
 

 During the greater part of the drive the machine was operated at an average speed of from 20 to 25 miles per hour, but some 300 feet west of the
 
 *48
 
 railroad track Robinson slowed his automobile to cross the trolley track. Mrs. Robinson, the only eye-witness of what Robinson did just before the accident, said that he “slowed considerably,” and “almost” came to a stop, and that she thought he then “went a little faster” toward the railroad crossing. She said that he did not drive so fast as 20 miles an hour, although she refused to state precisely how fast, except that it was faster than a person would walk. Hence the only direct testimony as to the speed of the automobile as it approached the railroad track is that it was running somewhat faster than a person would walk, and slower than 20 miles an hour.
 

 Mrs. Robinson was seated to the right of her husband, who was operating the machine. She heard the ringing of the crossing bell; as she expressed it, “I heard a little bell tinkling.” The automobile at that time was moving. She said, “I could feel the brakes going on at the same time that I heard the bell tinkling * * *. As soon as I heard the tinkling I looked up and saw the light * * *. Almost instantly I felt the brakes and the tinkling of the bell and saw the light of the locomotive.”
 

 Mrs. Robinson testified that she had to “look up” at the engine, “right up,” that it seemed “very near,” and that she thought they “were right on the tracks” when she saw the locomotive headlight. Immediately upon hearing the bell and seeing the light Mrs. Robinson opened the door on her side of the car, got out, and ran or walked toward the rear of the automobile. There is testimony in the record to the effect that the headlights
 
 *49
 
 of the automobile projected their lights from 20 to 30 feet ahead of the automobile, and the engineer says that he first saw the headlights projecting across the track when the locomotive was some seven or eight car lengths away from the crossing, and that an ordinary freight car length (the train was a freight train) is 40 feet. At this time the engineer did not see the automobile. He says that he saw the front part of the automobile when some three or four car lengths, that is some 120 to 160 feet, away from the crossing.
 

 From this testimony of the defendant in error it is evident that the locomotive moved approximately 140 to 160 feet during the time that the automobile moved not more than the range of its headlights, namely, 25 or 30 feet. The engineer testifies that when he first saw the automobile it was “close to the track.” The testimony shows that the automobile was then still moving, as the automobile brakes were applied to stop the machine at practically the same time as the warning whistles were sounded. When the engine was seven or eight car lengths away from the crossing the automobile must have been within 20 or 25 feet from the track, if the testimony as to the length of its headlight rays and as to the rays crossing the track be true. When the engineer first saw the automobile itself, it was moving within the area on the west side of the track and was moving eastwardly. Now if the automobile was approximately 25 feet from the track when the rays of its headlights were first .seen by the engineer, then when the automobile itself was first seen it was moving very slowly indeed, for if, as testified, the engine was going
 
 *50
 
 at the rate of 35 or 40 miles an hour, it took approximately three seconds to run the distance of the three or four car lengths. If the automobile moved the entire 25 feet between its position when the engineer first saw its headlight rays and the west rail of the track during the same time that the locomotive moved from 120 to 160 feet, then the automobile was going slower at least than nine miles an hour. If the automobile moved less than 25 feet in that time, the case as to speed of the automobile and as to the time which it took Robinson to stop the machine is still stronger for the plaintiff in error.
 

 If, as appears from the record, the automobile was approximately 25 feet from the west rail of the track when the rays of its headlights were first seen by the engineer, and if, as is conclusively shown in the record, the automobile afterwards moved forward “close to the track” during the two or three seconds before the engineer first caught sight of it, and if the automobile, as is conceded, stopped before it reached the track, then it is evident that the automobile stopped almost instantaneously upon the application of the brakes, within some 15 or 20 feet, or even less, and within less than the range of its headlights.
 

 The defendant in error concedes in its brief that the automobile stopped before it was on the tracks, but in such close proximity thereto that some part of the overhang of the engine struck its left front wheel, whirling the machine around and throwing Robinson into the locomotive. There is also testimony of Mrs. Robinson in the record to the effect that the automobile had stopped when she got out.
 
 *51
 
 This is borne out by the fact that she states that she was not thrown to the ground or thrown in any manner as she stepped out of the car.
 

 Immediately after the accident the headlights and the spotlight were still lit, and, while the left front wheel was broken and the fender damaged, the machine itself, so the evidence tends to show, was not much injured. “It wasn’t damaged much,” according to the testimony of one of the trainmen. In fact, the entire record, considered carefully both from the standpoint of the witnesses of the plaintiff in error and the defendant in error, shows that the automobile was proceeding very slowly when Robinson heard the
 
 bell;
 
 that he applied his brakes immediately upon the tinkling of the bell, and stopped before he reached the track, within at least some 15 or 20 feet.
 

 The testimony of Mrs. Robinson that she heard the bell and immediately saw the light was supplemented by testimony from two residents of the immediate neighborhood to the effect that the bell in question was difficult to hear, one of them stating that:
 

 “You have got to have a pretty quiet automobile if you could hear it ringing.”
 

 The amended petition contained several allegations of negligence based on the failure of the railroad company to maintain gates, lights, or watchmen at the crossing. These allegations of negligence were withdrawn from the consideration of the jury by the trial court. However, the trial court permitted the jury to consider the sixth allegation of negligence, which asserted:
 

 “That the company was negligent in failing and
 
 *52
 
 neglecting to construct and maintain at said crossing, lights, notices, and signals to advise the public and this plaintiff and her decedent of the existence of the said crossing and the approach of trains.”
 

 The trial court said, concerning this sixth allegation of negligence:
 

 “You may consider this ground so far as it relates to the question of notices, which would mean the sign or cross-arms required by law to be erected where a railroad crossing crosses a public road, but you have already been told that you will not consider the absence of lights on the track.as a ground of negligence, and the signals referred to here are not the signals given by bell or whistle. Those you have a right to consider, but not other signals such as electric bells and the like. So that those grounds of negligence will be eliminated from your finding and it is not for you to say that the company was negligent by reason of not providing gates, watchmen, lights, electric bells, or on account of the rate of speed at which the train was running, but you may consider the other grounds of negligence which are set out in the petition, which are, as alleged, that the engineer in charge of train failed to give warning of the approach of the train by ringing the bell of the locomotive or by sounding the whistle, and you may also consider the remaining ground of the sixth basis of negligence claimed in the petition, in which it is averred that no proper notice was given of the approach of the train by sign boards.”
 

 As to the allegation in the petition that the railroad company was negligent in not blowing the whistle and sounding the bell, which the court per
 
 *53
 
 mitted to go to the jury, the evidence was in conflict. The engineer stated that he blew his whistle at the whistling post located 1,569 feet from the crossing, and the brakeman substantiated this statement, but admitted that on a former trial he had testified that he made this statement because it was the practice so to blow the whistle. Other witnesses gave testimony which tended to establish that signals were not given until immediately prior to the accident.
 

 It is vigorously urged that there is no evidence of negligence in this record upon the part of the railroad company. We have examined the record very carefully in that particular, and feel that the requirements of this state in that respect are more than complied with, and that there is some evidence of negligence on the part of the railroad company as alleged in the petition and considered by the jury under the instructions of the trial court.
 

 The chief questions of law urged in the case are that under the rule as laid down in
 
 Gohman
 
 v.
 
 City of St. Bernard,
 
 111 Ohio St., 726, 146 N. E., 291, 41 A. L. R., 1057, the reversal of the judgment by the Court of Appeals must be upheld because the trial judge failed to give request No. 1, for which specific error the Court of Appeals reversed the judgment in the second trial, and also because he refused to give request No. 4. We question whether the rule of the
 
 Gohman case
 
 should be applied in this situation.
 

 As is conceded by counsel, the distinguished trial judge who tried the case at the third trial was unaware that the Court of Appeals had reversed the judgment on the second trial for the failure to give this particular charge. Counsel for the plain
 
 *54
 
 tiff administratrix, as stated professionally by him and not denied by opposing counsel, did not know of this fact owing to the circumstance that his partner, who tried the case at its second trial in the court below, had died shortly before the third trial. Counsel for the railroad company knew that the second judgment in favor of the decedent’s administratrix had been reversed for failure to give this particular request No. 1, but in spite of that fact did not call that circumstance to the attention of the trial court. He states that the trial court gave him no opportunity so to do, but the fact remains that it would have been quite possible for him to inform the trial judge that this particular request had been refused in the previous trial, and that this refusal had been held by the intermediate reviewing court to constitute reversible error. We do not believe that the rule of the law of the case should be extended to such a situation.
 

 Where counsel have gambled upon the outcome in the trial court, without informing the trial judge, who is from a different county and is not the judge who participated in the previous hearing of the case, of the existence of the ruling upon a request to charge which is offered in the trial then being held, counsel waive their right to urge in this court that their opponents are precluded from recovery under the doctrine of the
 
 Oohonan case.
 
 This contention is therefore overruled.
 

 We come then to consider whether as a (matter of substantive law the court was in error in refusing to charge request No. 1 and request No. 4, above given. We think that no error was committed by the trial court with regard to request No. 1, for the
 
 *55
 
 reason that it embraced a broad proposition never laid down as law in this state. The utmost extent to which this doctrine has been declared has been that the driver of an automobile in the nighttime has to have his machine under such control that the machine can avoid obstructions within the area lighted by its headlights. We have seen no cited case which holds that the driver has to have his machine under such control that in addition to being able to avoid obstructions within the area lighted by its headlights he must also be able to avoid hidden dangers of every kind. Babbitt on Law Applied to Motor Vehicles (3d Ed., 1923) Sections 555 and 556; Huddy on Automobiles (8th Ed., 1927) Section 396; and Berry on Automobiles (5th Ed., 1926) Section 196.
 

 Moreover, this request was not relevant to the issues presented by this record. The defendant in error in its brief conceded that the automobile was not on the tracks when the crash pame, but had stopped in close proximity to the tracks. Therefore it is evident that Robinson had stopped his machine within an area much smaller than that lighted by the headlights.
 

 An extensive list of decisions upon the question whether driving an automobile at a speed which prevents stopping within the range of vision of the driver constitutes negligence
 
 per se•
 
 is to be found in Volume 44 of the American Law Reports, at page 1397. The leading case
 
 (Murphy
 
 v.
 
 Hawthorne,
 
 117 Or., 319, 244 P., 79, 44 A. L. R., 1397) decided March 2, 1926, held:
 

 “No hard and fast rule makes it negligence to
 
 *56
 
 drive an automobile at such speed that it cannot be stopped within the range of the driver’s vision.”
 

 A respectable list of authorities from other states is cited and discussed at length in the note, which hold that it is negligence as a matter of law to drive an automobile at such a rate of speed that it cannot be stopped in time to avoid an obstruction discernible ahead of the driver within his range of vision. On the other hand, a number of courts of last resort have refused to adopt a hard and fast rule that the driver of an automobile is as a matter of law guilty of negligence in driving at such a rate of speed as prevents his stopping in time to avoid an obstruction within the range of his vision. The doctrine that such a question is a question of fact to be decided by the jury under all the .circumstances of the case is laid down in
 
 Jacobs
 
 v.
 
 Jacobs,
 
 141 La., 271, 74 So., 992, L. R. A., 1917F, 253;
 
 Fleming, Exr.,
 
 v.
 
 Hartrick,
 
 100 W. Va., 714, 131 S. E., 558;
 
 Ham
 
 v.
 
 County of Los Angeles,
 
 46 Cal. App., 148, 189 P., 462;
 
 Rosycki
 
 v.
 
 Yantic Grain & Products Co.,
 
 99 Conn., 711, 122 A., 717, 37 A. L. R., 528;
 
 Kaufman
 
 v.
 
 Hegeman Transfer & Lighterage Terminal, Inc.,
 
 100 Conn., 114, 123 A., 16;
 
 Kendall
 
 v.
 
 City of Des Moines,
 
 183 Iowa, 866, 167 N. W., 684;
 
 Owens et al., Adm’rs.,
 
 v.
 
 Iowa County,
 
 186 Iowa, 408, 169 N. W., 388;
 
 Ross
 
 v.
 
 Hoffman
 
 (Mo. App.), 269 S. W., 679;
 
 Devoto
 
 v.
 
 Umted Auto Transportation Co.,
 
 128 Wash., 604, 223 P., 1050.
 

 Under either rule, however, the trial court was correct in refusing to charge request No. 1 before argument, since the request applied the rule to
 
 *57
 
 hidden dangers of every kind, as well as to tangible objects.
 

 The Court of Appeals also found that the trial court erred in failing to give request No. 4 before argument. This request, which has been given above, was likewise objectionable. The defendant in error urges that this instruction states the law, and cites in support of that position
 
 N. Y. C. & St. L. Rd. Co.
 
 v.
 
 Kistler,
 
 66 Ohio St., 326, 64 N. E., 130. That case, however, was not an automobile case. The engineer operating the train of the defendant at the crossing and time in question covered by this record had the right to assume that any person approaching the crossing in an automobile would exercise ordinary care in so doing. It was the duty of Robinson, as he approached the crossing in question, at all times to be in the exercise of ordinary care for his own protection and safety, and in the proper exercise of that kind and degree of care he was charged with hearing and seeing what an ordinarily prudent person would have seen and heard while looking and listening in an ordinarily prudent manner. The court charged these propositions of law, and also charged that, if Robinson failed to see or hear the approach of the train, or failed to hear the warning of the electric gong at the crossing, when the same would have been seen or heard by an ordinarily prudent person while in the exercise of ordinary care, and that failure contributed to bring about the collision and his death, then the plaintiff could not recover.
 

 The court refused, however, as a matter of law, to charge as requested in effect in charge No. 4,
 
 *58
 
 that the engineer, while having the right to presume that a driver approaching the track in an automobile would stop before going on the track, or in such close proximity to the track that his machine would be struck by the locomotive or any other part of the train, under the facts of this case was relieved from taking any further precaution or making any effort to stop or slacken the speed of the train if the engineer discovered that presumption was not well founded.
 

 While an automobile driver rests under the duty of looking and listening before he crosses a railroad track of whose existence he is aware, it is not as a matter of law his absolute and unqualified duty to stop before he goes upon such railroad track unless his looking or listening discloses the presence of a moving train. We therefore find no error in the trial court’s refusal to give the charge as requested.
 

 For the above reasons, the judgment of the Court of Appeals will be reversed, and the judgment of the court of common pleas affirmed.
 

 Judgment reversed and judgment of the court of common pleas affirmed.
 

 Day, Robinson and Matthias, JJ., concur.