**ERIE R. CO. v. LADE.**
**No. 11801.**

United States Court of Appeals
Sixth Circuit.
Feb. 10, 1954.

Robert M. Weh, Cleveland, Ohio (Robert M. Weh, Burgess, Fulton & Fullmer, Cleveland, Ohio, on the brief), for appellant.

Craig Spangenberg, Cleveland, Ohio (Craig Spangenberg, Harrison, Spangenberg & Hull, Cleveland, Ohio, on the brief), for appellee.

Before SIMONS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.

SIMONS, Chief Judge.

The railroad assails a judgment against it for injuries suffered by Lade in a railroad crossing accident upon the private property of the Standard Oil Company at Cleveland, Ohio, in which Lade, while driving a tractor and trailer for the Oil Company, was injured. The case was submitted to a jury after the denial of the railroad's motion for directed verdict based upon the contention that Lade was guilty of contributory negligence, as a matter of law. A verdict for substantial damages followed. Neither in brief nor oral argument does the railroad deny its own negligence in the operation of its engine. It plants its case upon Lade's negligence which it asserts was a contributing proximate cause of the accident and upon certain alleged procedural errors.

Upon the property, where the collision occurred, the Standard Oil Company maintains a large warehouse some 86 feet wide and 150 feet deep. In the northerly face of the building are three loading doors and along its easterly elevation is a railroad sidetrack close to and parallel with it. Sixty feet to the north of the warehouse is a brick driveway running approximately east and west and crossing the spur track about 60 feet from the northeast corner of the building. Lade's vehicle, consisting of a tractor and trailer-van, had approached the warehouse on the roadway from the west and after crossing the spur-track had backed to the center door of its north front to pick up a load. While Lade was engaged in the loading operation, appellant backed a train of two tank cars propelled by a diesel engine along the east front of the warehouse to spot the tank cars at one of the loading platforms on that side. From where Lade was engaged, he could not see the train because it was concealed by the corner of the warehouse. There is dispute as to the distance the train had proceeded south of the corner of the building, the appellant contending that the train was standing 25 feet south of its edge while the appellee contended the distance was 80 feet. After picking up six drums of oil, Lade set forth to move his vehicle to another building of the Oil Company. To accomplish his mission he was obliged to travel in a northerly direction approximately 60 feet to the road, then to swing right thereon and drive east approximately 40 feet to the crossing. When he was within six or seven feet from the track, he reduced his speed from about 4 miles per hour to 2 miles per hour, looked to his left and right, saw nothing, and proceeded over the track. When almost two-thirds of the way across with his lengthy vehicle, it was struck by the

diesel, now relieved of its tank cars, at about one-third of the length of the van from the rear. There is dispute in the evidence as to the speed of the diesel immediately preceding the collision, the appellee contending that the engine was moving at about 20 miles per hour and the appellant contending that it was moving but 4 miles an hour. There is also dispute as to whether the diesel and the truck started at the same time, as the appellant contended, or whether the diesel was at rest when the appellee made his observations in approaching the track. No employee of the railroad was protecting the crossing although there was evidence that it was usually so protected. The diesel was equipped with both bell and horn. There is evidence that neither signal was used, the railroad conceding that it was not customary to use the horn but insisting that the bell was being rung during the entire movement of the diesel.

It is the contention of the railroad that if Lade had looked to the right at a point six or seven feet from the crossing he would have been able to see the diesel approaching and traveling at a speed of two miles an hour, in low gear, he could have stopped his vehicle in time to avoid the accident and, failing to do so, he was negligent with his negligence, contributing proximately to the accident. In this contention, it relies upon Ohio law wherein it is held that there is a duty upon a traveler upon the highway, when approaching a steam railroad crossing, to look and listen for the approach of trains at a place and in a manner that will make the looking and listening effective, Detroit, T. & I. R. Co. v. Rohrs, 114 Ohio St. 493, 503, 151 N.E. 714. The cases wherein the rule has been stated and applied are carefully analyzed in the exhaustive opinion of Judge Miller of this court in Detroit, T. & I. R. Co. v. Yeley, 165 F.2d 375. Appellant's contention, however, is based upon the assumption that the diesel was approaching the crossing when Lade's observations were made. There is, however, much evidence from which a reasonable

inference could have been drawn that this was not so.

██ In the application of legal principles, long experience has demonstrated that there are few absolutes and that every case must be decided upon its peculiar facts. The law in Ohio is not otherwise. While an automobile driver is under a duty to look and listen before he crosses a railroad track of whose existence he is aware, it is not his absolute and unqualified duty to stop before he goes on the track, unless his looking and listening discloses the approach of a moving train. Robinson v. Pennsylvania R. Co., 117 Ohio St. 43, 58, 158 N.E. 83. It is not clear from the evidence that the diesel had started to move at the time Lade had made his observations. One witness testified that the diesel "shot out" from the side of the building as the truck went on the crossing. The evidence of this witness is not discredited by the fact that he didn't know how fast the engine was going. The following important considerations must be taken into account. The diesel had been stationary within the afternoon shadows of the warehouse at a point, according to the railroad's evidence, less than 100 feet from the crossing. The track had been sanded when it had come in pushing the tank cars so as to get traction for the operation. It was again sanded going out, when the engineer received warning of danger. Nevertheless, Lade's trailer of approximately 8000 lbs. unloaded weight and containing a load of 18000 to 20000 pounds and connected to a tractor weighing approximately 5 tons, with the brakes of the engine set, was swung around by the collision and the tractor upset until it rested on its side, with the front of the stopped diesel 16 to 18 feet across the roadway. Upon an assumption of these facts, two experts testified that the diesel must have been going 20 miles an hour. Add the circumstance that the collision took place not upon a through right-of-way of the railroad where trains of high speed could reasonably be expected but on a short spur track within

the private property of the Oil Company where truck deliveries were daily being made. Add also evidence that in a test run of the diesel it was demonstrated that it could accelerate up to 20 miles an hour in approximately 52 feet from a standing start. Apply the principle that there is no actionable liability for negligence unless injury resulting therefrom could reasonably have been foreseen in the light of attending circumstances, discussed by us in Johnson v. Kosmos Portland Cement Co., 6 Cir., 64 F.2d 193, and we come to the conclusion that the issue of negligence on the part of Lade was one properly submitted to the jury. Reasonable men could well differ as to whether Lade failed in the exercise of due care in crossing the track under the circumstances disclosed, when under familiar rules they must be considered in the light most favorable to the appellee. We noted, not so long ago, that the U. S. Supreme Court, in a series of cases, has drawn a sharp line between the constitutional function of a jury to pass upon issues of fact and the function of the court to determine whether there is substantial evidence to submit such issues to the jury. Pennsylvania R. Co. v. Goldie, 6 Cir., 182 F.2d 9, 11.

■■ Among the procedural errors alleged, the appellant contends that the court should have excluded the stenographic record of Lade's statement to the defendant's claim agent, after the railroad had called the court reporter as a witness to establish that Lade had made a contradictory statement. Upon the plaintiff's motion, the entire statement was admitted and the defendant claims it was thereby prejudiced, relying upon Prok v. City of Cleveland, Ohio App., 102 N.E.2d 253. We perceive no error in the admission of this evidence. Rule 43(a), Federal Rules of Civil Procedure, 28 U.S.C., gives the court much latitude in determining the admissibility of evidence and doubts must be resolved in favor of admissibility. The fact that state courts would exclude the testimony does not necessarily require its exclu-

sion by a United States District Court within such state. Garford Trucking Corporation v. Mann, 1 Cir., 163 F.2d 71; Boerner v. United States, 2 Cir., 117 F.2d 387; Holtzoff Federal Practice, p. 678, § 962.

■ A final question of procedure relates to the failure of the court to give defendant's written request in terms of the Ohio rule as to looking and listening where such looking and listening would be effective. We have examined with care the instructions of the court to the jury. While not given in the specific language of the written request, we think the court fairly instructed the jury upon the issue of contributory negligence; that, even if such instruction was in any sense inadequate, such inadequacy was waived by the stipulation entered into between the parties.

Judgment affirmed.