The BALTIMORE AND OHIO RAIL-ROAD COMPANY, Appellant,

v.

Kate S. HENERY, as Administratrix of the Estate of J. Harry Henery, deceased, Appellee.

No. 12742.

United States Court of Appeals Sixth Circuit.

Aug. 14, 1956.

Shackelford Miller, Jr., Circuit Judge, dissented.

John C. Graham, Zanesville, Ohio, Graham, Graham, Gottlieb & Johnston, Zanesville, Ohio, on the brief, for appellant.

Frank E. Bennett, Columbus, Ohio, Emmett Abel, McConnelsville, Ohio, on the brief, for appellee.

Before SIMONS, Chief Judge, and ALLEN and SHACKELFORD MILLER, Jr., Circuit Judges.

ALLEN, Circuit Judge.

This appeal arose out of an action for wrongful death filed in the state court and removed to the federal court on the ground of diversity. The following facts are not controverted:

On March 13, 1951, at about 10:00 o'clock in the morning the decedent, driving a 1936 Plymouth automobile north on a township road in Morgan County, Ohio, proceeded partially across appellant's railroad track at the so-called Henery crossing, and was struck by appellant's train running from Zanesville, Ohio, to Parkersburg, West Virginia. The automobile was completely demolished and decedent was killed. The engineer admitted that the car was pushed some 620 feet before the train stopped.

Decedent lived on a township road a short distance from the crossing in question, which is about 6 miles south of Malta, Ohio, on the Muskingum River. The township road upon which decedent was traveling is a dirt road approximately 8 feet in width, which crosses appellant's track at grade and at right angles and some 26 feet north of the railroad track intersects with the county highway. The river is some 50 or 100 feet further north. The railroad,

the highway, and the Muskingum River at this point run generally in an east-west direction. The decedent had lived 34 years on the township road and was very familiar with the crossing. At the southwest corner of the intersection of the township road and the railroad track there is a steep 'embankment 50 feet high, the northerly side of which is on the railroad right of way. The base of the embankment is some 5 feet south of the south rail of the track which extends westerly from the crossing some 684 feet in a straight line. At the time of the collision appellant's train, which was about an hour late, was traveling east at approximately 30 or 35 miles an hour. The train consisted of a Diesel motor car with passenger seats and a baggage car in the rear.

As to the following points the evidence was conflicting: The engineer said that he blew the whistle constantly from a point approximately 1,600 feet west of the crossing. This was supported by one railroad employee, but two disinterested witnesses testified that the whistle did not blow from the Thompson crossing to the Henery crossing some ¾ of a mile away. One railroad employee said that the bell was ringing at the intersection, but the engineer admitted that he was not ringing the bell. The ringing of the bell and the sounding of the whistle are required at such a crossing under Ohio statute, Section 8853 of the General Code of Ohio, in effect at the time of the accident. This section has been re-enacted in Section 4955.32 Ohio Revised Code, effective October 1, 1953, with certain changes not material here.

There was testimony to the effect that due to the embankment, which was a 45° slope, it was impossible to see down the track until a car was so near the track that it was at a point of danger. It was shown by a surveyor, admittedly qualified, who from an automobile made detailed observations of the distance visible down the track from certain points approaching the track from the south, that, when the car was within 2 feet or 2 feet 2 inches of the rail, over 600 feet of the track were visible, but when the bumper of the car was 4 feet back from the rail the south rail was visible for only 121 feet. The testimony that at 4 feet from the rail only 121 feet of the track were visible was corroborated by decedent's wife. She stated in effect that in approaching the crossing a view of the stretch down to the curve is to be had at a point between 40 and 50 feet from the track, but that a traveler nearer the track would have a complete view of the straight stretch of right of way only when the "bumper would be up about even with the rails." In a car, she said there would not be a complete view of the right of way northward unless a portion of the car extended over the rail. This testimony was substantiated to some degree by appellant's witness, the engineer, who testified that the township road "Comes right out of the hill onto the railroad." It was disputed by testimony on behalf of appellant to the effect that within 7 feet of the south rail some 600 feet of the track was visible, and by a photograph taken from the center of the township road. The overhang of the train was shown to be 2½ feet.

At the conclusion of the evidence appellant moved for a directed verdict which was denied. After verdict and judgment in favor of plaintiff, appellant moved for judgment notwithstanding the verdict, or in the alternative for new trial, which was also denied. The refusal of these motions is the sole question presented in this appeal.

██ Under Ohio law, controlling here, the usual rule applies that a motion for directed verdict amounts to an admission of all the facts which the evidence tends to prove. Moreover, the evidence is to be construed most strongly in favor of the party against whom the motion is made, Wilkeson v. Erskine & Son, Inc., 145 Ohio St. 218, 61 N.E.2d 201; 39 O.Jur. 799, Sections 182 and 183. See also Hamden Lodge,

etc. v. Ohio Fuel Gas Co., 127 Ohio St. 469, 189 N.E. 246. The same rule governs disposition of motions for judgment *non obstante veredicto.* Every reasonable presumption and fair constructive intendment will be made to sustain the pleading after verdict. 23 O.Jur. 581; Nott v. Johnson, 7 Ohio St. 270; State Automobile Mutual Insurance Co. v. Robinette, 47 Ohio App. 22, 189 N.E. 857.

Appellant's principal reliance is on the decision of the Supreme Court of Ohio in Detroit, Toledo & Ironton R. Co. v. Rohrs, 114 Ohio St. 493, 151 N.E. 714, in which that court held that under the undisputed evidence the defendant's motion to direct a verdict in its favor should have been granted, holding in the syllabus:

> "It is the duty of a driver of a vehicle upon a public highway when approaching a grade crossing of a steam railroad to both look and listen for approaching trains and to do so at such time and place and in such manner as will make the looking and listening effective."

This case has been followed in various Ohio decisions and also in this court in Detroit, Toledo & Ironton Railroad Co. v. Yeley, 6 Cir., 165 F.2d 375.

The question presented is whether the quoted syllabus requires reversal of the judgment rendered on the instant record. The rule of the Rohrs case is not an absolute. Erie R. Co. v. Lade, 6 Cir., 209 F.2d 948, 951. We are required here to assume that the jury found that decedent, not shown to have been negligent, had his vision cut off so that he was compelled to rely on hearing. He was struck by an approaching train which in violation of state law failed to give audible signals. As a matter of law was decedent guilty of having failed to look and listen at a time when his looking and listening would have been effective? Reduced to its simplest terms this is the contention of appellant and we think it cannot be sustained.

Negligence of the decedent is not presumed. Also in Ohio, while the syllabus of a Supreme Court decision such as Detroit, Toledo & Ironton R. Co. v. Rohrs, supra, states the law, Rule VI of the Rules of the Supreme Court of Ohio; Wrede v. Richardson, 77 Ohio St. 182, 213, 82 N.E. 1072, opinion by Chief Justice Shauck; Haas v. State, 103 Ohio St. 1, 8, 132 N.E. 158, 17 A.L.R. 1164, it does not state the law for every somewhat similar case. The principles and rules of law stated in the syllabus must be interpreted with reference to the facts of the case, 11 O.Jur. 798, Section 145, Note 20 and cases cited. Baltimore & Ohio R. Co. v. Baillie, 112 Ohio St. 567, syllabus 2, 148 N.E. 233. Also the opinion of the court must be read in connection with the facts disclosed. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Mills Bros., 101 Ohio St. 173, 178, 128 N.E. 81. The court in In re Poage, 87 Ohio St. 72, 100 N.E. 125, 128, held that the syllabus in a case relied on "states the law of Ohio with reference to the facts upon which it is predicated" and also commented, "it is not possible for a court to comprehend in every syllabus all the many phases of facts that may arise in other litigations touching similar transactions." In Miller v. Eagle, 96 Ohio St. 106, 110, 117 N.E. 23, the Supreme Court of Ohio refused to apply a syllabus ruling on the validity of a law relating to jury trial in the court of common pleas to a law relating to jury trial in municipal courts. The syllabus is not to be read as being broader than the facts of the case warrant, 11 O. Jur. 798. The syllabus in the Rohrs case, therefore, is not necessarily to be construed as covering this record. For the purposes of this appeal we are compelled to view the evidence most strongly in favor of appellee. So considered at 2 feet 2 inches from the track in a position of extreme danger for an automobile, a clear view existed for some 600 feet. At 4 feet from the track only 121 feet of the south rail were visible. In

the Rohrs case the decedent had a clear view of the crossing for at least 243 feet at a point 20 feet from the railroad track. The engine in the Rohrs case was a local freight traveling at 5 or 6 miles an hour instead of 30 to 35 miles per hour as here. Neither can the syllabus in Patton v. Pennsylvania Rd. Co., 136 Ohio St. 159, 24 N.E.2d 597, cover this case, for there under the undisputed facts decedent at a point 65 feet south of the track had a clear view of the headlight of the engine for 582 feet and at 40 feet from the tracks could have seen even further. In Detroit, Toledo & Ironton Railroad Co. v. Yeley, supra, the truck driver stopped at a point of safety and stated that he looked and listened at that point for the train. No such evidence appears here. The rule that looking and listening must be at a point where it is effective by necessary implication requires that such a point shall exist near the track but far enough away so that the automobile driver may stop in safety. The Rohrs case and the Yeley case also require by implication that the motorist be able to rely upon his vision.

■■ Here it was the contention of appellant that there was no point of safety immediately south of the track from which the visual precaution required under the Rohrs case could be effective. Substantial evidence was introduced in support of this contention. To drive one's car within 2 feet of a Diesel engine whose overhang is estimated at 2 or 2½ feet would place the driver in a situation of extreme peril. To construe the word "effective" in such an absolute sense would bar any motorist from recovery in any case where his car was struck at a railroad crossing even though he was exercising due care. This is not the general law of Ohio applicable to every grade crossing accident. As stated in Robinson v. Pennsylvania Railroad Co., 117 Ohio St. 43, 58, 158 N.E. 83, 88, "it is not as a matter of law his [an automobile driver's] absolute and unqualified duty to stop before he goes upon such railroad track unless his looking or listening discloses the presence of a moving train." Construing the facts herein most strongly in favor of appellee, the majority of the court concludes that the jury was entitled to infer that the accident was caused by a train outside the limits of decedent's vision violating the statute as to audible warning. The jury here might reasonably have drawn different inferences from those contended for by appellant and the motion for directed verdict was properly denied. Childe v. Cincinnati Street Railway Co., 80 Ohio App. 128, 74 N.E.2d 436. To the same effect are Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 64 S. Ct. 409, 88 L.Ed. 520; Highfill v. Louisville & Nashville Railroad Co., 6 Cir., 154 F.2d 874; Ellis v. Union Pacific Railroad Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572.

Under this record no reversible error was committed in denying the motion for directed verdict, the motion for judgment notwithstanding verdict, and the alternative motion for new trial.

The judgment of the District Court is affirmed.

SHACKELFORD MILLER, Jr., Circuit Judge (dissenting).

I am of the opinion that the judgment should be reversed on the authority of Detroit, T. & I. R. Co. v. Rohrs, 114 Ohio St. 493, 151 N.E. 714; Pennsylvania R. Co. v. Rusynik, 117 Ohio St. 530, 159 N.E. 826, 56 A.L.R. 538; Pennsylvania R. Co. v. Moses, 125 Ohio St. 621, 184 N.E. 8. See Lang v. Pennsylvania R. Co., 59 Ohio App. 345, 18 N.E.2d 274; Detroit T. & I. R. Co. v. Yeley, 6 Cir., 165 F.2d 375.