The NEW YORK CENTRAL RAILROAD COMPANY, Appellant,

v.

Alberta L. DELICH, Administratrix of the Estate of Daniel B. Delich, Deceased, Appellee.

No. 13151.

United States Court of Appeals Sixth Circuit.

Feb. 11, 1958.

jury verdict in a railroad crossing case caused by a collision at 5:45 a. m. on February 10, 1954, between a New York Central train and a tractor trailer driven by appellee's decedent, killed in the accident. At the point of collision the New York Central, hereinafter called NYC, has double tracks running generally east and west. The NYC tracks are approximately parallel to a single track of the Akron, Canton & Youngstown Railroad, hereinafter called A. C. & Y. All three tracks intersect a highway, Route 250, running north and south. From the A. C. & Y. track south to the NYC tracks the road is concededly steep and rough. 290 feet north of the NYC tracks is a large sign bearing the warning "Bump." Decedent was proceeding south on the highway driving a tractor and four-ton trailer with a 14-ton load of steel rails. He had crossed the A. C. & Y. track and the northern NYC track and was struck at the southern or eastbound NYC track. It was agreed that the engine's bell and whistle were sounding and the headlights were on. The train was running 70 miles per hour. Both the A. C. & Y. and the NYC crossings are protected by flasher lights which are activated simultaneously when a train on either track reaches 3,450 feet from the crossings.

The testimony as to whether the flasher lights were working is in controversy. The crew said they were operating. Testimony, with the aid of photographs, showed that on Route 250 one mile south of the southerly NYC track the flashers are plainly visible. This visibility continues for a quarter of a mile. At approximately three-quarters of a mile from the crossing at a slightly easterly curve in the road two barns and a group of evergreen trees obscure the view so that the flashers are not visible. This is called the blind spot. After one-fourth mile at approximately one-half mile from the crossing the flashers are again visible. A disinterested witness, Sitar, familiar with this crossing, who was driving toward it from the south immediately before the accident at about 40 miles an hour and looking for the flashers

---

Paul Lamb, Cleveland, Ohio (C. Richard Andrews, Cleveland, Ohio, on the brief), for appellant.

Warren M. Briggs, Cleveland, Ohio (A. H. Dudnik, Cleveland, Ohio, on the brief), for appellee.

Before ALLEN, McALLISTER and STEWART, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of a judgment for appellee entered upon a

for his own safety, testified that on the straight road before the curve the flashers can be seen "if they are working." Sitar said "that night" he saw "no flasher lights." While in the blind spot and just before the curve Sitar heard a noise like a blowout which made his truck "shatter" and as he rounded the curve he saw the wreck. As to the working of the flasher lights and the noise that he heard in the blind spot, Sitar's evidence, taken together with the testimony as to the physical surroundings, raised questions of fact as to 1) whether the flasher lights at the crossing were operating at the time of the accident, and 2) whether the crash he heard was the noise of the collision.

■■ Appellant contends that under the doctrine of Detroit, Toledo & Ironton Railroad Company v. Rohrs, 114 Ohio St. 493, 151 N.E. 714; Patton v. Pennsylvania Railroad Company, 136 Ohio St. 159, 24 N.E.2d 597; Detroit, Toledo & Ironton Railroad Co. v. Yeley, 6 Cir., 165 F.2d 375, and other similar decisions, the court was required to sustain its motion for directed verdict at the close of plaintiff's testimony and at the conclusion of the evidence. Syllabus 1 in the Rohrs case reads as follows:

"It is the duty of a driver of a vehicle upon a public highway when approaching a grade crossing of a steam railroad to both look and listen for approaching trains and to do so at such time and place and in such manner as will make the looking and listening effective."

The District Court held that it was controlled by a recent Ohio decision, Biery v. Pennsylvania Railroad Co., 156 Ohio St. 75, 99 N.E.2d 895. In the Biery case, also a railroad crossing case, the trial judge directed a verdict in favor of defendant, but the Supreme Court of Ohio in a unanimous decision reversed the judgment. The court in the syllabus restated the established rule that "the trial court, upon defendant's motion for a directed verdict, must construe the evidence most strongly in plaintiff's favor and submit the case to the jury if such

evidence, with all inferences reasonably deducible therefrom, would permit reasonable minds to reach different conclusions with respect to those questions of fact essential to be proved by plaintiff." It also declared in the syllabus the equally well-established rule that "Negligence is never presumed. In an action based on negligence, the presumption exists that each party was in the exercise of ordinary care and such presumption prevails until rebutted by evidence to the contrary."

Here, as in the Biery case, supra, there was no showing that decedent did not look for approaching trains when he came to the crossing.

■ The jury rendered a general verdict. Considering the evidence with all the inferences reasonably deducible and construing it most strongly in favor of plaintiff, we assume that the jury found that decedent saw no flasher lights operating and therefore crossed the A. C. & Y. track. Decedent is presumed to have looked in both directions at the A. C. & Y. track and then to have looked both east for a westbound NYC train and west for an eastbound NYC train. Without the flasher lights ,he lacked the specific warning of a train in the block. By the silence of the signal he was entitled to rely upon the indication of safety given by the failure of the flashers to operate. Cleveland, C., C. & I. Railway Company v. Schneider, 45 Ohio St. 678, 17 N.E. 321, 322. The third paragraph of the syllabus in this case reads as follows:

"When gate-men are maintained at such crossings, it is their duty to observe the tracks, and know when, on account of trains or engines thereon, it becomes dangerous for persons to cross, and, when it is so, to close the gates, and keep them closed, to prevent persons from going upon the tracks, so long as the danger continues; and when the tracks are clear, or persons may cross without danger from passing cars and locomotives, then to open the gates, and keep them open, to enable persons to cross, so long as

it is safe for them to do so, but no longer. Persons approaching the crossing, or about to cross, have the right to presume, in the absence of knowledge to the contrary, that the gate-men are properly discharging their duties; and it is not negligence on their part to act on the presumption that they are not exposed to dangers which can arise only from a disregard by the gate-men of their duties. Hence an open gate, with the gate-man in charge, is notice of a clear track and safe crossing; and, in the absence of other circumstances, when the gates are open, and the gate-men present, it is not negligence in persons approaching the crossing with teams to drive at a trot, or pass on to the tracks through the open gates without stopping to listen, though the view of the tracks on either side of the crossing is obstructed; nor, in such case is their failure, when at a distance of 25 feet from the track, to look for locomotives 150 feet or more from the crossing, negligence, though they could have been seen."

In Tanzi v. New York Central Railroad Company, 155 Ohio St. 149, 98 N.E.2d 39, 24 A.L.R.2d 1151, the third syllabus of the Schneider case, supra, was in substance approved and followed in the syllabus. In accord see Danis v. New York Central Railroad Company, Ohio App., 106 N.E.2d 308, and Eastern Motor Dispatch, Inc., v. Pennsylvania Railroad Company, 82 Ohio App. 428, 77 N.E.2d 275.

█ The jury could have found that decedent had to shift gears, for the grade between the A. C. & Y. track and the NYC tracks was both steep and rough. The large "Bump" sign at the side of the road a short distance north of the three tracks was significant. Also, the photographs show a steep drop from the edge of the asphalt road at the approach to the NYC crossing. As decedent ascended the asphalt road, 20 feet wide, to the railroad crossing, he was compelled not only to watch for trains and approaching traffic but to keep his tractor trailer from the dangerous edge of this narrow road. Into the pit formed by the road and the bank under the railroad tracks the tractor trailer plunged when it was hit by the train. There is no evidence that decedent did not look down the final track for the eastbound train which was traveling over a mile a minute. Appellant's principal argument is that decedent, approaching the crossing, had an unobstructed view of the eastbound track for 2,000 feet from 125 feet north of the track. This entirely ignores the fact that decedent was compelled to look four ways for two tracks as well as to keep a lookout ahead for approaching traffic. An error of judgment as to the order in which decedent should look down the track might well have been fatal, but it was not contributory negligence as a matter of law.

The District Court correctly submitted the case to the jury. The Biery case, supra, shows that in the State of Ohio where the crossing is hazardous and no evidence is given as to negligence of the decedent, a jury question arises.

The case of Columbus, Delaware & Marion Electric Company v. O'Day, 123 Ohio St. 638, 176 N.E. 569, relied on by appellant, has little bearing here. In that case the jury answered interrogatories which placed the case squarely within the doctrine of Detroit, Toledo & Ironton Railroad Company v. Rohrs, supra. The general verdict in favor of the plaintiff was entirely contradictory to the answers to the interrogatories. The Supreme Court of Ohio held that under Section 11464, O.G.C. the special findings necessarily controlled. The legal question there was not, as here, whether the case should have been submitted to the jury. It was so submitted but the jury found facts completely at variance with its general verdict.

██ As pointed out by this court in Baltimore & Ohio Railroad Company v. Henery, 6 Cir., 235 F.2d 770, the rule of the Rohrs case, supra, is not an absolute. Erie Railroad Co. v. Lade, 6 Cir., 209 F.2d 948, 951. While in Ohio the

syllabus of a Supreme Court decision states the law and the rule relied upon here is stated in the syllabus, Detroit, Toledo & Ironton Railroad Company v. Rohrs, supra, it does not state the law for every somewhat similar case. The principles of law declared in the syllabus must be interpreted with reference to the facts in the case. 11 O.Jur. 798, Section 145, Note 20, and cases cited. Baltimore & Ohio Railroad Company v. Baillie, 112 Ohio St. 567, syllabus 2, 148 N.E. 233. In this case the Supreme Court of Ohio refused to apply the syllabus of Loftus v. Pennsylvania Railroad Co., 107 Ohio St. 352, 140 N.E. 94, stating in effect that, because the facts in the Baillie case were so different from those in the Loftus case, the syllabus in the Loftus case, though broadly applicable, could not be regarded as determinative, 112 Ohio St. 570, 148 N.E. 234. The court in In re Poage, 87 Ohio St. 72, 100 N.E. 125, 128, held that the syllabus in a case relied on "states the law of Ohio with reference to the facts upon which it is predicated" and also declared "it is not possible for a court to comprehend in every syllabus all the many phases of facts that may arise in other litigation touching similar transactions." The court there refused to follow the syllabus in State of Ohio v. Sanner, 81 Ohio St. 393, 90 N.E. 1007, 26 L.R.A.,N.S., 1093.

Carefully studied, the seeming contradictions in Ohio railroad crossing cases in general arise from the variations in the facts presented. In material points the facts here are distinguishable from those of the decisions principally relied on by appellant. In Detroit, Toledo & Ironton Rd. Company v. Rohrs, supra, the driver of the automobile had a clear and unobstructed view of the freight train which was backing on its own momentum at less than 8 miles per hour. If the driver had looked he could have told the back from the front of the train. In Pennsylvania Railroad Company v. Rusynik, 117 Ohio St. 530, 159 N.E. 826, 56 A.L.R. 538, smoke from a freight train obstructed the truck driver's vision. He admitted that, after the freight train had passed, he did not look again in the direction from which the passenger train approached. Here there is no evidence that decedent did not look. In Pennsylvania Railroad Company v. Moses, 125 Ohio St. 621, 184 N.E. 8, and in Patton v. Pennsylvania Railroad Company, supra, the signals were working.

Under Ohio law restated in the Biery case, supra, as the jury found for the plaintiff, motion for directed verdict having been denied, we must construe the facts most strongly in favor of plaintiff here. Hamden Lodge No. 517, I.O. O.F. v. Ohio Fuel Gas Company, 127 Ohio St. 469, 189 N.E. 246; Wilkeson v. Erskine & Son, Inc., 145 Ohio St. 218, 61 N.E.2d 201; 39 O.Jur. 799, Sections 182, 183.

■■ It has never been held in Ohio that the question as to whether decedent approaching a railroad track has looked and listened at such a time and place as to "make the looking and listening effective" is determined against him by the mere fact that he was killed. Whether the driver exercised due care is a question for the jury. Moreover, it is the law in Ohio that, where reasonable minds might differ upon material questions of fact, the issue should be submitted to the jury. Where, because of the inherent hazards of the several tracks, the great speed of the train, the physical condition of the crossing, the lack of due warning and other circumstances set out here, reasonable minds might differ as to whether the decedent was showing due care, both Ohio courts and this court, construing Ohio law, have upheld verdicts for plaintiff. Cf. Baltimore & Ohio Railroad Co. v. Henery, supra; Eastern Motor Dispatch, Inc., v. Pennsylvania Railroad Co., supra; Cleveland, C., C. & I. Railway Co. v. Schneider, supra. Cf. Erie Railroad Co. v. Stewart, 6 Cir., 40 F.2d 855; Pennsylvania Railroad Company v. Shindledecker, 6 Cir., 44 F.2d 162.

The judgment of the District Court in submitting the case to the jury and over-

ruling motion notwithstanding the verdict is plainly correct.

 It was not error for the District Court to refuse the charge requested by appellant to the effect that the Federal income tax law exempts from taxation an award made in a suit for wrongful death and refusing request to charge "If you should find in favor of the plaintiff, I warn you not to consider income tax liability on your award." Maus v. New York, Chicago & St. Louis Railroad Company, 165 Ohio St. 281, second syllabus, 135 N.E.2d 253. See also Combs v. Chicago, St. Paul, Minneapolis & Omaha Railway Company, D.C., 135 F.Supp. 750; O'Donnell v. Great Northern Railway Company, D.C., 109 F.Supp. 590; Chicago & North Western Railway Company v. Curl, 8 Cir., 178 F.2d 497, 502. Cf. Stokes v. United States, 2 Cir., 144 F.2d 82.

The judgment of the District Court is affirmed.

STEWART, Circuit Judge (dissenting).

As to the sufficiency of the evidence to support a finding of negligence on the part of the railroad, I agree with the views expressed by my colleagues. From Sitar's testimony an inference could properly be drawn that the flasher lights were not operating at the time of the collision.

It is upon the issue of the decedent's contributory negligence that our views differ. Upon that issue I am unable to reconcile today's decision with the pronouncements of the Supreme Court of Ohio setting out the standard of care required of a motorist who approaches a railroad crossing. That court has held in a long line of cases that if the driver has an opportunity to see an approaching train from a point of vantage at which he can stop in time to avoid a collision, his failure effectively to look makes him guilty of contributory negligence as a matter of law. Detroit, T. & I. Rd. Co. v. Rohrs, 1926, 114 Ohio St. 493, 151 N.E. 714; Toledo Terminal Rd. Co. v. Hughes, 1926, 115 Ohio St. 562, 154 N.E.

916; Pennsylvania Rd. Co. v. Rusynik, 1927, 117 Ohio St. 530, 159 N.E. 826, 56 A.L.R. 538; Patton v. Pennsylvania Rd. Co., 1939, 136 Ohio St. 159, 24 N.E. 2d 597; Woodworth v. New York Cent. Rd. Co., 1948, 149 Ohio St. 543, 80 N.E.2d 142; see Detroit, T. & I. R. Co. v. Yeley, 6 Cir., 1947, 165 F.2d 375.

It is undisputed that in approaching the crossing, the decedent had an unobstructed view of the eastbound track for 1800 feet when he was 290 feet away, and that his range of vision increased to 2000 feet as he traveled between that point and the track at which the collision occurred. He was familiar with the crossing and had driven over it frequently. The decedent's conduct in continuing to the point where he was struck by the westbound train was clearly irreconcilable with the duty of effectively looking before entering the crossing. The appellee is not aided by the presumption that the decedent was exercising ordinary care, when the undisputed physical circumstances show a clear disregard of this legal duty. Woodworth v. New York Cent. Rd. Co., supra. Patton v. Pennsylvania Rd. Co., supra.

The driver's duty as set out in the cases cited above is not modified in Ohio where warning devices provided by the railroad fail to operate. Where a clear view along the tracks is available from a safe distance, the Ohio Supreme Court has taken the position that failure of the driver effectively to look is a bar to his recovery despite the failure of the railroad's warning devices. Columbus, Delaware & Marion Elec. Co. v. O'Day, 1931, 123 Ohio St. 638, 176 N.E. 569; Lohrey v. Baltimore & O. Rd. Co., 1936, 131 Ohio St. 386, 3 N.E.2d 54; Toledo Terminal Rd. Co. v. Hughes, 1926, 115 Ohio St. 562, 154 N.E. 916.

It is of course true, as the majority opinion points out, that in O'Day the legal question was not, as here, whether the case should have been submitted to the jury. The case was submitted, and the jury by answers to interrogatories found that the driver could have seen the approaching interurban car in time to

stop his automobile in a place of safety if he had looked, and that he did not look. In the present case there was no conflict in the evidence as to the decedent's range of vision, and the undisputed physical circumstances thus conclusively pointed to the same state of facts as found by the jury in O'Day.

The significance here of the O'Day case, as I see it, is that it imposed upon the driver the same standard of care as that set out in the Rohrs case, even when a warning device erected by the railroad was not operating at the time of the collision. The third paragraph of the syllabus in the O'Day case [123 Ohio St. 638, 176 N.E. 570] is unequivocal:

> "The presence of an automatic signal alarm, voluntarily instituted and operated by an interurban railway company at a city street crossing, does not absolve a traveler upon the highway from the exercise of the care that a reasonably prudent person would exercise under all the circumstances. Such care upon the part of a driver of an automobile includes the obligation of exercising the faculties of sight and hearing, when such driver is far enough from the railway track to be able to stop his automobile before reaching the crossing."

To be sure, the duty imposed by the O'Day, Hughes, and Lohrey cases is a quite different one from that originally enunciated by the Ohio Supreme Court in 1888 in Cleveland, C., C. & I. Railway Co. v. Schneider, 45 Ohio St. 678, 17 N.E. 321, 322, where it was said that, "Persons approaching the crossing, or about to cross, have the right to presume, in the absence of knowledge to the contrary, that the gate-men are properly discharging their duties, * * *"

The difference between this original rule and the one developed in the later cases was brought into sharp focus by the dissenting opinion in the Lohrey case, which pointed out the majority's departure there from the Schneider rule. 131 Ohio St. 386, 390, 3 N.E.2d 54, 57.

The conflict was again recognized by the Ohio Supreme Court in Tanzi v. New York Cent. Rd. Co., 1951, 155 Ohio St. 149, 98 N.E.2d 39, 24 A.L.R.2d 1151. In that case a motorist had swerved into a pedestrian to avoid colliding with a train at a crossing where the watchman had failed to warn of the train's approach. The pedestrian sued both the motorist and the railroad. The opinion in the Tanzi case pointed out that it was not necessary there to determine whether the rule of the Schneider case would still be followed "in an action by a driver." 155 Ohio St. at page 157, 98 N.E.2d at page 43. It is significant, however, that the court in Tanzi held that although there was sufficient evidence to support a finding of the railroad's negligence, the motorist was negligent as a matter of law in approaching the crossing at a speed substantially greater than he would have used if a warning had been given. For that reason the judgment upon a jury verdict against the railroad alone was set aside as unreasonable.

While Ohio law thus requires a motorist approaching a known railroad crossing to look at a time and place when and where looking will be effective, Ohio law obviously does not and cannot impose such a duty where, because of the peculiar nature of the crossing, there is no such time nor place. When a crossing is made hazardous by a physical obstruction to an approaching motorist's view, the question of the motorist's contributory negligence is one for a jury.

Thus, Biery v. Pennsylvania Rd. Co., 1951, 156 Ohio St. 75, 99 N.E.2d 895, 896, is only one in a series of decisions holding that it cannot be negligence as a matter of law for a motorist to fail to see a train which could not have been seen from a position of safety. In that case the motorist was struck at a crossing by the defendant's train westbound on "main track number 3." There was evidence that a brush pile, signal tower and tool shed "tended to obstruct the view of the main tracks to the east," and that steam from a standing switch en-

gine, "continuing and not of momentary existence" "totally obscured the view along main track number 3 to the east." In holding that the issue of the motorist's contributory negligence was one for a jury, the court, reviewing the above evidence, pointed out that there was "no showing that the decedent did not stop and look for approaching trains when he reached the crossing and that by looking then or during the progress over the crossing he could have seen the oncoming train." See also Cleveland, C., C. & St. L. Ry. Co. v. Kuhl, 1931, 123 Ohio St. 552, 176 N.E. 222; Baltimore & O. R. Co. v. Henery, 6 Cir., 1956, 235 F.2d 770.[1]

It is thus in cases involving crossings made peculiarly hazardous by a physical obstruction to an approaching traveler's range of vision—where there can be no conclusive showing that by looking he could have seen—that the question of his contributory negligence is to be determined by a jury. I do not understand, however, that the Ohio Supreme Court has held that a jury should determine the question in a case where the crossing was made unusually hazardous in some other way, such as by the speed of the train. Indeed, all railroad crossings are inherently hazardous, which is no doubt the reason for the rule requiring an approaching motorist to look and listen while still in a position of safety. The speed of the train in the present case was seventy miles an hour. In the Patton case it was sixty, and in the Woodworth case, eighty; yet in each of those cases judgment was entered for the railroad as a matter of law.

Ohio imposes a high standard of care upon a traveler approaching a railroad grade crossing, a standard which inevitably often leads to a harsh result in litigation. For the reasons discussed, I think the law of Ohio made it the district court's duty to grant the appellant's motion for final judgment.

---

**1.** Pre Erie Railroad Co. v. Tompkins (304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188) decisions of this court, such as Erie Railroad Co. v. Stewart, 6 Cir., 1930, 40 F. 2d 855 and Pennsylvania R. Co. v. Shindledecker, 6 Cir., 1930, 44 F.2d 162, have no bearing here.